[No. H015399. Sixth Dist. Apr. 24, 1997.]

MARGARET C. CARLSON, Plaintiff and Appellant, v.
MIKE EASSA, Defendant and Respondent.

686

COUNSEL

Joanne Kelly and John Viljoen for Plaintiff and Appellant.

Cayce & Ottone and Christopher C. Cayce for Defendant and Respondent.

OPINION

ELIA, J.—In this appeal, plaintiff Margaret C. Carlson seeks review of an order denying her motion to vacate a stipulated judgment in a "URESA" action for child support arrearages. (Fam. Code, § 4800 et seq.) Appellant contends the judgment was void because the district attorney settled her claim without her consent, contrary to Welfare and Institutions Code section 11478.2, subdivision (j). We agree that the settlement was unauthorized and reverse the postjudgment order.

*Background*

This action began in September 1991, when appellant filed an action for paternity and child support against respondent Mike Eassa. Paternity was established in March 1995, when the court determined that respondent was the father of Brett Steven Tracy, born July 13, 1977. Because appellant resided in Delaware, child support issues were governed by the Uniform Reciprocal Enforcement of Support Act (URESA), Family Code section 4800 et seq.

After protracted litigation, respondent was found to be the minor's father and ordered to pay temporary support. The issue of permanent child support was not heard until August 25, 1995. At that hearing, Stephen Hooper, the deputy district attorney representing appellant, informed the court that around the 10th of July he had received a call from Amy Silvestri, who represented a United States Senator from Delaware. According to Hooper, Silvestri had told him "in very specific terms" that appellant had contacted the senator's office because "this case had taken entirely too long, and she

wanted it resolved or settled immediately." Silvestri was "very emphatic and very firm that it was to be resolved immediately." Hooper then contacted respondent's counsel and suggested they settle the case immediately. Respondent offered $6,000, which Hooper accepted.

A few days after the settlement, however, Hooper received a letter from appellant indicating there had been a misunderstanding. At the hearing he thought Silvestri was "backing away" from her previous request that he should settle the case. Hooper claimed that he would not have settled without a firm statement from Silvestri, and he now felt bound to honor the $6,000 agreement with respondent, "even if it's a bad bargain." Respondent's attorney simply asked the court to confirm the district attorney's authority to settle the matter.

After a conference in chambers, the court announced that it would continue the matter one week to approve the settlement on condition that respondent tender the money at that time. On September 1, 1995, Hooper advised the court that Delaware, the initiating jurisdiction, had requested he not sign the stipulation. Hooper stated he would not object to being *ordered* to sign it; or, he suggested, the court could accept the settlement without a signature. The trial court accepted tender of respondent's check for $6,000 and ordered the matter concluded. The stipulated judgment was filed September 5, 1995.

On November 29, 1995, appellant moved to vacate the September 5 order and requested support according to applicable guidelines retroactive to September 1991. Appellant asserted that she had not authorized settlement at "such a small amount." Appellant maintained that the September order was ineffective as to her, because she did not participate and the district attorney did not legally represent her. Citing Welfare and Institutions Code section 11478.2, subdivision (j), appellant argued that the district attorney was not permitted to enter into any stipulation for support without consent of all parties or their attorneys.

Appellant submitted a declaration from Amy Silvestri in support of the motion to vacate. Silvestri confirmed that appellant had enlisted her help because "the case had gone on for too long" and appellant wanted to know if "there was a way to expedite it." Silvestri stated: "I told Mr. Hooper that Ms. Carlson was very frustrated with the delays and that she wanted the case to proceed as quickly as possible. I explained that I was calling only to inquire on Ms. Carlson's behalf why the case was taking so long and whether anything could be done to move it along any more quickly. Mr. Hooper said that he understood and would do everything he could to keep

the case moving along." Silvestri added that she never told Hooper to take any specific action such as advancing the hearing or settling the case. When confronted after the settlement, she said, Hooper attempted to justify his action by saying he had "the impression" that appellant wanted him to settle the case, even though he had not specifically been asked to do so. Because the settlement was unacceptable to appellant, however, he assured Silvestri that he would "do his best" to remedy the situation by having the settlement withdrawn or reconsidered.[1]

Respondent opposed appellant's motion to vacate on several grounds. First, he argued, Hooper had ostensible authority to settle the matter, because Sylvestri's communication to him gave him reason to believe that appellant wished the matter settled. Any misunderstanding, respondent added, was appellant's own fault, because she used the United States Senator's office to exert pressure on the district attorney. Respondent also urged the court to apply estoppel principles against appellant, because she "gave specific authorization to her agents" to settle the issue of arrearages. By authorizing settlement, she had "implicitly authorized" the district attorney to accept an amount lower than she had expected to receive. Finally, respondent argued Welfare and Institutions Code section 11478.2, subdivision (j), was inapplicable in a URESA case; consequently, appellant's authorization was not required.

In a supplemental argument, respondent suggested the court lacked "equitable jurisdiction" to vacate the prior order, because appellant had failed to avail herself of her right to appeal from the September order. As to the merits, respondent argued that Hooper had had actual authority to sign the stipulation because the court had ordered him to do so: "That was the authorization." He further pointed out that appellant had given the Delaware Division of Child Support Enforcement a power of attorney, which "transferred" authority to negotiate and settle her claim to the District Attorney of Monterey County.

The trial court characterized the issue as "simply whether the District Attorney had a duty to seek and to secure Petitioner's agreement to the

---

[1] At the ensuing hearing Hooper recounted his conversation with Sylvestri with respect to appellant's desire that the case be "resolved" more quickly. According to Hooper, ". . . I told her, 'Hey, if we could settle it for a decent amount, it would have happened.' The only way we could get the decent amount would [be to] go to hearing because we disagreed with [respondent's counsel] and Mr. Eassa on what the case was worth. But when we got the call from Amy Silvestri on behalf of Margaret Carlson, they said, 'This is taking too long. Margaret Carlson wants this case over, and over now.'" Hooper said he was frustrated with this case because he had not been able to settle the matter favorably, and because appellant had "stepped outside the channels of communication; went through a political office to try to exert pressure on the District Attorney to get it resolved."

stipulated settlement." Finding no such duty, the court denied the motion to vacate.

*Discussion*

█ Before addressing the merits of the controversy, we must ascertain the appealability of the trial court's order. Upon request the parties submitted supplemental briefing on the question of whether this court has jurisdiction to hear the appeal. Having reviewed their supplemental arguments and the relevant statutory authority, we conclude the appeal is proper because the underlying judgment is void.

Code of Civil Procedure section 904.1 describes the judicial acts from which a party may appeal.[2] Subdivision (a)(2) of the statute authorizes an appeal from an order made after an appealable judgment. The broad language of this provision appears to confer appealability upon any postjudgment order if the judgment was itself appealable. Such a conclusion would be erroneous, however. █ "To be appealable, a postjudgment order must satisfy two additional requirements. . . . [¶] The first requirement . . . is that the issues raised by the appeal from the order must be different from those arising from an appeal from the judgment. (See *Rooney* v. *Vermont Investment Corp.* (1973) 10 Cal.3d 351 . . . .) 'The reason for this general rule is that to allow the appeal from [an order raising the same issues as those raised by the judgment] would have the effect of allowing two appeals from the same ruling and might in some cases permit circumvention of the time limitations for appealing from the judgment.' (*Id.* at p. 358.) . . . [¶] The second requirement . . . is that 'the order must either affect the judgment or relate to it by enforcing it or staying its execution.' [Citation.]" (*Lakin* v. *Watkins Associated Industries* (1993) 6 Cal.4th 644, 651-652 [25 Cal.Rptr.2d 109, 863 P.2d 179], fn. omitted; *City and County of San Francisco* v. *Shers* (1995) 38 Cal.App.4th 1831, 1838 [46 Cal.Rptr.2d 57]; *Fundamental Investment etc. Realty Fund* v. *Gradow* (1994) 28 Cal.App.4th 966, 979 [33 Cal.Rptr.2d 812].)

█ In light of these standards, an order denying a motion to vacate a judgment is generally not appealable; otherwise, an appellant would receive "either two appeals from the same decision, or, if no timely appeal has been made, an unwarranted extension of time in which to bring the appeal." (*In re Marriage of Brockman* (1987) 194 Cal.App.3d 1035, 1040 [240 Cal.Rptr. 96].) █ In this case, the postjudgment order did not decide new issues,

---

[2]This section provides, in relevant part: "(a) An appeal may be taken from a superior court in the following cases: [¶] (1) From a judgment . . . [¶] (2) From an order made after a judgment made appealable by paragraph (1)."

but merely "affirmed" the validity of the judgment. Thus, it initially appears that appeal from the postjudgment order is precluded.

As appellant points out, however, an exception to this general rule applies when the underlying judgment is void. In such a case, the order denying the motion to vacate is itself void and appealable because it gives effect to a void judgment. (194 Cal.App.3d at p. 1040; *Adoption of Matthew B.* (1991) 232 Cal.App.3d 1239, 1267 [284 Cal.Rptr. 18]; *Residents for Adequate Water* v. *Redwood Valley County Water Dist.* (1995) 34 Cal.App.4th 1801, 1805 [41 Cal.Rptr.2d 123]; see also *In re Marriage of Goodarzirad* (1986) 185 Cal.App.3d 1020, 1031 [230 Cal.Rptr. 203] [stipulated judgment].)

A judgment is void if the court rendering it lacked subject matter jurisdiction or jurisdiction over the parties. Subject matter jurisdiction "relates to the inherent authority of the court involved to deal with the case or matter before it." (*Conservatorship of O'Connor* (1996) 48 Cal.App.4th 1076, 1087 [56 Cal.Rptr.2d 386].) Lack of jurisdiction in this "fundamental or strict sense means an entire absence of power to hear or determine the case, an absence of authority over the subject matter or the parties." (*Abelleira* v. *District Court of Appeal* (1941) 17 Cal.2d 280, 288 [109 P.2d 942, 132 A.L.R. 715].)

In a broader sense, lack of jurisdiction also exists when a court grants "relief which [it] has no power to grant." (*Armstrong* v. *Armstrong* (1976) 15 Cal.3d 942, 950 [126 Cal.Rptr. 805, 544 P.2d 941]; *Becker* v. *S.P.V. Construction Co.* (1980) 27 Cal.3d 489, 493 [165 Cal.Rptr. 825, 612 P.2d 915].) Where, for instance, the court has no power to act "except in a particular manner, or to give certain kinds of relief, or to act without the occurrence of certain procedural prerequisites," the court acts without jurisdiction in this broader sense. (*Abelleira* v. *District Court of Appeal, supra,* 17 Cal.2d at p. 288.)

Collateral attack of such judgments is disfavored, even when the judgment is unauthorized by statute. (See, e.g., *Pacific Mut. Life Ins. Co.* v. *McConnell* (1955) 44 Cal.2d 715, 727 [285 P.2d 636] [judgment contrary to statute]; *Armstrong* v. *Armstrong, supra,* 15 Cal.3d at pp. 950-951 [mistaken application of law not reaching court's power to act]; *Conservatorship of O'Connor, supra,* 48 Cal.App.4th at p. 1087-1088 [excess of jurisdiction]; *Law Offices of Stanley J. Bell* v. *Shine, Browne & Diamond* (1995) 36 Cal.App.4th 1011, 1021-1022 [43 Cal.Rptr.2d 717] [excess of jurisdiction].) In some cases, however, if the trial court has made "a grant of relief to one of the parties [which] the law declares shall not be granted," such judgment may be

considered void for lack of jurisdiction notwithstanding the court's jurisdiction over the person and the subject matter. (*Michel* v. *Williams* (1936) 13 Cal.App.2d 198, 200 [56 P.2d 546]; *Jones* v. *World Life Research Institute* (1976) 60 Cal.App.3d 836, 847-848 [131 Cal.Rptr. 674]; *Vasquez* v. *Vasquez* (1952) 109 Cal.App.2d 280, 283 [240 P.2d 319].) An unauthorized grant of relief "is to be distinguished from a judgment in which the relief granted is simply in *excess of the amount* to which a party is otherwise entitled under the law applicable to his cause of action." (*Jones* v. *World Life Research Institute*, *supra*, 60 Cal.App.3d at p. 848.) Thus, to the extent that appeal from an order denying a motion to vacate constitutes a collateral attack on an underlying judgment from which appeal was not taken, the appeal is not necessarily precluded merely because the court lacked the "wrong" kind of jurisdiction in entering the judgment.

■ In this case, appellant contends that the stipulated judgment was void because she was not asked to consent to or sign the stipulation, contrary to the mandate of Welfare and Institutions Code section 11478.2, subdivision (j).[3] Respondent maintains that this statute is inapplicable to URESA actions. We must resolve this issue before determining whether the court erred, and if so, whether that error rendered the judgment void.

Section 11478.2, subdivision (j), provides as follows: "A person who is receiving services under Section 11475.1 but who is not currently receiving public assistance on his or her own behalf or on behalf of a child shall be asked to execute, or consent to, any stipulation establishing or modifying a support order in any action in which that person is named as a party, before the stipulation is filed. The district attorney or Attorney General shall not submit to the court for approval a stipulation to establish or modify a support order in such an action without first obtaining the signatures of all parties to the action, their attorneys of record, or persons authorized to act on their behalf."

Clearly, appellant was not asked to consent to the stipulation proffered by the district attorney to the court; on the contrary, Hooper submitted the document without appellant's signature and with full knowledge that she opposed the settlement he had reached with respondent. Thus, if section 11478.2 governed this action, the district attorney's acts were unauthorized.

We agree with appellant that section 11478.2 applies to this action. This statute was enacted in 1991 for the express purpose of encouraging local district attorneys to make support enforcement efforts one of their highest

---

[3]All further statutory references are to the Welfare and Institutions Code unless otherwise indicated.

priorities, and to pursue such cases diligently "to enable families to be self-supporting and to avoid welfare dependency." (Stats. 1991, ch. 495, § 1.) The same legislation made "related and conforming changes" to existing URESA provisions for initiating proceedings, diligently prosecuting actions, and enforcing orders, thereby clarifying the district attorney's representation of the public interest. (Legis. Counsel's Dig., Sen. Bill No. 106, 1991 (Reg. Sess.) Summary Dig., p. 206.)

There is no reason expressed either in URESA or in California's support enforcement program to hold the district attorney to different standards and procedures merely because the child who ultimately benefits from his or her services resides in another state. On the contrary, URESA itself directs the prosecuting attorney to "prosecute the case diligently." (Fam. Code, § 4831, subd. (b).) "Prosecuting attorney" is defined as "the public official in the appropriate place who has the duty to enforce criminal laws relating to the failure to provide for the support of any person." (Fam. Code, § 4802, subd. (h).) In California, that function is served by the district attorney of each county.[4] (§ 11475.1, subd. (a).) In order to comply with this mandate, the district attorney need only adhere to his or her duties under the procedural scheme set forth in section 11475.1 et seq. Resort to this scheme would be consistent with URESA's choice-of-law provision, Family Code section 4820, as well as the federal mandate that child support orders be made pursuant to the forum state's law. (28 U.S.C. § 1738B(g); cf. *State of Ohio* v. *Barron* (1997) 52 Cal.App.4th 62, 67 [60 Cal.Rptr.2d 342].)[5] Indeed, the district attorney in this case evidently assumed his duties were defined by sections 11475.1 et seq., because he expressly designated himself as attorney under sections 11475.1 and 11478.2 as well as under pertinent URESA provisions each time he drafted a superior court order.

Section 11475.1 establishes a unit within the district attorney's office of each county. That unit has the responsibility of "promptly and effectively establishing, modifying, and enforcing child support obligations . . . and determining paternity in the case of a child born out of wedlock." (§ 11475.1, subd. (a).) Subdivision (g) defines " 'enforcing obligations' " to include "the obtaining by the district attorney of an initial order for child

---

[4]If the district attorney fails to prosecute the case, the Attorney General may undertake the representation of the public interest. (Fam. Code, §§ 4831, 4851.)

[5]Family Code section 4820 states: "Duties of support applicable under this chapter are those imposed under the laws of any state where the obligor was present for the period during which support is sought. The obligor is presumed to have been present in the responding state during the period for which support is sought until otherwise shown." Subdivision (h)(l) of 28 United States Code section 1738B provides that, with two exceptions not relevant here, "the forum State's law shall apply" in any proceeding to establish, modify, or enforce a child support order.

support." Subdivisions (b) and (c) set forth the required contents of the complaint and answer form provided to the defendant, and subdivision (f) permits the district attorney to seek temporary child support. Subdivision (j) confirms the district attorney's authority to intervene "*in any action under the Family Code*, or other proceeding wherein child support is an issue."

No exception is made for plaintiffs who reside outside of California. Indeed, such persons are specifically acknowledged in subdivision (m) of section 11475.1, where guidelines are provided for determining venue of the action.[6] It is thus apparent that all children, even those living in other states, are the intended beneficiaries of the diligent prosecution of support obligations of parents in this state.

Section 11478.2 reinforces this conclusion. Subdivision (a), which clarifies that the district attorney represents the public interest (not the recipient of services), applies to "all actions involving paternity or support, *including*, but not limited to, *proceedings under the Family Code*." Subdivision (g), which requires notice to the recipient of services when a support order is obtained, states that the notice in URESA cases should be made in conformity with URESA. Subdivision (*l*) prescribes different ways of sending the notices required by the statute to recipients of section 11475.1 services depending on their residence: California residents are to receive all notices by personal delivery or by first-class mail, whereas in URESA actions the district attorney must mail the notices to the court of the initiating state.[7]

Respondent argues that these specific references to URESA in subdivisions (g) and (*l*) of section 11478.2 imply that all other subdivisions do not apply to URESA actions. He suggests that if the Legislature had intended every subdivision of section 11478.2 to apply to URESA actions, it would have said so in each subdivision, and it would not have "made a point of distinguishing" between URESA and non-URESA actions in subdivision (g). Respondent's reasoning is flawed. If the Legislature intended section 11478.2 *not* to apply to URESA obligees, then what was the point of making special provision for sending notice of proceedings and orders to these

---

[6]Section 11475.1, subdivision (m)(1)(E) states that if the support obligee does not reside in California and certain exceptions do not apply, venue shall be in the county of the obligor's residence.

[7]Section 11478.2, subdivision (*l*) provides: "(*l*) The notices required in this section shall be provided in the following manner: [¶] (1) In all cases in which the person receiving services under Section 11475.1 resides in California, notice shall be provided by mailing the item by first-class mail to the last known address of, or personally delivering the item to, that person. [¶] (2) In all actions enforced under Chapter 6 (commencing with Section 4800) of Part 5 of Division 9 of the Family Code, unless otherwise specified, notice shall be provided by mailing the item by first-class mail to the initiating court."

parties? The only logical answer can be that the district attorney's duties under section 11478.2 apply to *all* recipients of services under section 11475.1, including URESA obligees, except where a different procedure is specifically denoted. Respondent does not contradict appellant's assertion that she was a "recipient of services" under section 11475.1.

We must conclude, therefore, that URESA actions were intended to be prosecuted according to the same procedures as any other child support enforcement effort. Although no court has made this recognition explicit, published decisions have assumed section 11475.1 is applicable to URESA proceedings in describing the procedural history of the case under review, in noting that they were conducted pursuant to section 11475.1. (See, e.g., *In re Marriage of Comer* (1996) 14 Cal.4th 504, 511 [59 Cal.Rptr.2d 155, 927 P.2d 265]; *In re Marriage of Ward* (1994) 29 Cal.App.4th 1452, 1455 [35 Cal.Rptr.2d 32]; *In re Marriage of Angoco & San Nicolas* (1994) 27 Cal.App.4th 1527, 1532 [33 Cal.Rptr.2d 305].) We see no reason to exclude section 11478.2, part of the same procedural scheme, from the duties of the prosecuting attorney in enforcement of child support obligations brought pursuant to URESA.

Respondent protests, however, that URESA actions should be exempt from the procedural mandates of section 11478.2 because obtaining the signature of every out-of-state plaintiff would cause undue delays and pose obstacles to compliance with federal time restrictions. We are unconvinced. Both Congress and this state's Legislature have placed the highest priority on the right of children to adequate support. The requirement that a custodial parent approve a settlement of support promotes that interest and advances the state's purpose of obviating reliance on public assistance to provide for children's needs. The risk of delay in obtaining the signature of the custodial parent is far outweighed by the necessity of resolving support issues in a balanced and thoughtful manner. Whether that parent lives in the same county, another county, or a more distant state should not be a basis for bypassing these considerations.

The Legislature has underscored the importance of involving parents in settlements of their support rights by restating the requirement in a separate provision. Family Code section 4065, like the statute at issue here, expressly prohibits the district attorney from stipulating to a child support order below the guideline formula amount without the consent of the recipient parent. In addition, under that provision the trial court may not approve such a stipulated agreement unless the parties declare, among other things, that they

agree to the order and that the needs of the child will be adequately met.[8] Even in general civil contexts, the Legislature has deemed the *personal* approval of the litigants, either orally before the court or by written agreement, to be a prerequisite to entry of stipulated judgments. (Code Civ. Proc., § 664.6; *Levy* v. *Superior Court* (1995) 10 Cal.4th 578, 583-586 [41 Cal.Rptr.2d 878, 896 P.2d 171].) Because settlement of a lawsuit ends the litigation, it is "such a serious step that it requires the client's knowledge and express consent." (*Id.* at p. 583.)

In the context of child support, the Legislature has made it plain that settlement with the obligor parent is an especially "serious step." Accordingly, in a case not involving public assistance, settlement of a child support issue should not be undertaken without the consent of all parties to the action. If the district attorney has not obtained the signature of each party, the party's attorney of record, or authorized representative, the stipulation is not valid.

A judgment is void on its face if the defect is apparent upon examination of the record. (*Becker* v. *S.P.V. Construction Co.*, *supra*, 27 Cal.3d at p. 493; *National Diversified Services, Inc.* v. *Bernstein* (1985) 168 Cal.App.3d 410, 415 [214 Cal.Rptr. 113]; *Estate of Lee* (1981) 124 Cal.App.3d 687, 691 [177 Cal.Rptr. 229].) Here, because the court was without authority to enter any judgment upon a purported stipulation to which both parties had not agreed, the judgment on its face is invalid. This is not merely a mistaken application of the law or a grant of excess relief, but a complete absence of power to accord relief, a judgment "completely outside the scope of the court's jurisdiction to grant . . . ." (*Jones* v. *World Life Research Institute*, *supra*, 60 Cal.App.3d at p. 845; cf. *Wells Fargo & Co.* v. *City etc. of S. F.* (1944) 25 Cal.2d 37, 43-44 [152 P.2d 625] [grant of excess relief not void]; *Armstrong* v. *Armstrong*, *supra*, 15 Cal.3d at pp. 950-951 [mistaken application of law].) As one court has suggested, "The mere fact that the court has jurisdiction of the subject matter of an action before it does not justify an exercise of a power not authorized by law, or a grant of relief to a party that the law declares shall not be granted." (*Selma Auto Mall II* v. *Appellate Department* (1996) 44 Cal.App.4th 1672, 1683-1684 [52 Cal.Rptr.2d 599].)

---

[8]Family Code section 4065 provides different approval requirements than section 11478.2, subdivision (j). In cases where the stipulation is for an amount below guidelines, the latter statute requires a declaration that, inter alia, the party is fully informed of his or her child support rights and has agreed to the stipulated order without coercion. The district attorney may not stipulate to such an order if the recipient parent has not consented. It does not specifically denote consent by a signature, but neither does it designate the party's attorney or other representative as authorized to sign a stipulation. Because the parties have not raised or discussed Family Code section 4065 in these proceedings, we make no comment on the relationship between that statute and section 11478.2, subdivision (j).

A situation comparable to the one before us arose in *In re Marriage of Kreiss* (1990) 224 Cal.App.3d 1033 [274 Cal.Rptr. 226]. There a former wife had not been served with notice of a motion to terminate spousal support, contrary to the mandate of former Civil Code section 4809. The respondent, her former husband, contended that the lack of service was merely a procedural irregularity, which did not make the judgment void and subject to collateral attack. Alternatively, he argued, the appellant waived the notice requirement of the statute; and she had actual notice of the proceeding in any event. This court rejected all of the respondent's contentions. Although the appellant did not bring her motion to set aside the order until after the time had expired under Code of Civil Procedure section 473, nevertheless the failure to comply with the statutory prerequisite of notice rendered the order void on its face and subject to collateral attack at any time. (224 Cal.App.3d at pp. 1039-1040.)

The same result is compelled in this case. As the Supreme Court noted in *Levy* v. *Superior Court*, *supra*, 10 Cal.4th 578 with respect to general civil settlements, a personal approval requirement "protects parties from impairment of their substantial rights without their knowledge and consent." (*Id.* at p. 585.) Here it is not only the substantial rights of the parties, but the welfare of a child that is to be protected. Even acts in excess of jurisdiction may be deemed void, although fundamental jurisdiction exists, where a child's welfare is the subject of the litigation. (See, e.g., *In re Marriage of Goodarzirad*, *supra*, 185 Cal.App.3d 1020, 1027.) Because the record here does not reflect appellant's consent in accordance with section 11478.2, subdivision (j), the judgment approving the district attorney's settlement of appellant's child support claim was void, and the motion to vacate should have been granted.

### Disposition

The order denying appellant's motion to vacate the September 5, 1995, judgment is reversed. Costs on appeal to appellant.

Premo, Acting P. J., and Wunderlich, J., concurred.