Filed 11/26/14  Bard Water Dist. v. Granite Construction CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| BARD WATER DISTRICT, | D065147 |
| Plaintiff and Appellant, | |
| v. | (Super. Ct. No. ECU07750) |
| GRANITE CONSTRUCTION COMPANY, | |
| Defendant and Respondent. | |


APPEAL from a judgment of the Superior Court of Imperial County, Jeffrey Jones, Judge.  Affirmed.

Klinedinst, James D. Crosby and Heather N. Catron; Henderson, Caverly, Pum & Charney and James D. Crosby for Plaintiff and Appellant.

Procopio, Cory, Hargreaves & Savitch, Kendra J. Hall, Jeffrey S. Hood and Ryan C. Caplan, for Defendant and Respondent.

Bard Water District (District) sued its general contractor, Granite Construction Company (Granite), seeking a declaration that a final judgment entered in Granite's favor three years earlier is void.  The court in the current action sustained Granite's demurrer without leave to amend.  The District appeals.  We affirm.

FACTUAL AND PROCEDURAL SUMMARY

*Factual Background*[1]

The District is a water agency operating in Imperial County, and is governed by a board (Board).  In about June 2005, the District retained Granite to serve as the general contractor for a water canal project.  Several months later, disputes arose between the parties.  Granite sought amounts owed, and the District denied that it owed Granite any funds and asserted its own claims for Granite's allegedly defective work.

In November 2005, Granite filed an action in the Imperial County Superior Court, and the District filed a cross-complaint.  Pursuant to the parties' stipulation, the matter was transferred to the Riverside County Superior Court.

In about February 2009, the parties agreed to submit the Riverside action to binding arbitration under the American Arbitration Association (AAA) rules.

About nine months later while evidentiary hearings were being held in the arbitration, in November 2009, the parties entered into a conditional settlement, the terms of which were memorialized in a handwritten agreement signed by attorneys for both parties and by the AAA arbitrator, Robert Baumgarten.  Under these terms, the District agreed to pay Granite $185,235.94.  The agreement also stated:  "Three of four [District Board] members have agreed to the above terms.  In [the] event that the [Board] does not

---

[1]     Because we are reviewing a judgment after a demurrer, we set forth the background facts based on the complaint's factual allegations and documents properly subject to judicial notice.  (See *Sprinkles v. Associated Indemnity Corp.* (2010) 188 Cal.App.4th 69, 74.)

2

approve the terms of the above, Mr. Baumgarten and AAA will retain jurisdiction of the arbitration. Absent confirmation of the board, the stipulation will become null & void."

Two months later, on December 9, 2009, arbitrator Baumgarten issued a "Consent Award" consistent with the terms of the conditional settlement. The Consent Award included the amounts the District agreed to pay and stated these amounts shall be paid by December 21, 2009. The Consent Award further stated:

> "On or before [noon on December 1, 2009] . . . or as soon thereafter as is reasonable under the circumstances and timing of the [District's] Board approval action, all parties and counsel shall have executed a formal settlement agreement which will include, among other items, a full project release and waiver of Civil Code § 1542. Said settlement agreement shall be prepared by [Granite's attorney], and all reasonable efforts shall be expended by [the District's attorney] to timely review and consent as to form.
>
> ". . . Upon receipt of tender [of the monetary amounts], respective counsel shall file with the proper court a dismissal with prejudice as to their action filed therein . . . . [¶] . . . If all administrative elements have been completed, the Consent Award will be provided to Counsel on or before [December 1, 2009], or as is reasonable thereafter pending receipt of information regarding Bard Water District Board Action."

The Consent Award further provided for postaward interest, allocated responsibility for administrative/arbitrator costs, and stated the parties shall bear their own attorney fees. The last paragraph stated: "This Consent Award is in full settlement of all claims and counter-claims submitted to this Arbitration. All claims, not expressly granted herein, are denied." The Consent Award was signed by Arbitrator Baumgarten, but not by the parties.

Less than two months later, on January 29, 2010, Granite filed a petition in Riverside County Superior Court to confirm the arbitrator's award (the Consent Award),

3

and served the petition on the District. Two weeks later, on February 11, the District's Board unanimously rejected the settlement agreement underlying the Consent Award.

The next month, the District filed an opposition to Granite's petition to confirm, claiming the Consent Award had "no force or effect." The District argued that its Board rejected the settlement agreement on February 11 and thus the court should refer the matter back to arbitration for completion of the evidentiary hearings. The District also claimed that its former counsel had not timely provided the Board with the proposed written settlement agreement, and therefore the Board members were unable to vote on the settlement until the February 2010 meeting.

In reply papers, Granite argued that the District's opposition was untimely because it was filed more than one month late. Granite also argued that the Consent Award retained its validity despite the February 11 vote because in November 2009, the District's counsel "confirmed" the Board had agreed on the settlement terms and that signatures would be forthcoming. Granite further argued the Board's objections to the *written* settlement agreement was a "red herring" because the written document was "a formality" that was unnecessary to the validity of the Consent Award. (Italics omitted.)

The next month, on April 12, the court held a hearing on Granite's petition to confirm the arbitration award (the Consent Award). The District's attorney was present at this hearing, as was Granite's attorney. After the hearing, the court granted Granite's petition.

Two weeks later, on April 28, 2010, the court, over the District's opposition, entered a judgment against the District. The judgment states:

4

"On April 12, 2010, the Court having granted the Petition to Confirm the Arbitration Award issued by Robert Baumgarten on December 9, 2009 . . . , and having ordered entry of judgment as requested in that Petition as allowed by Code of Civil Procedure Section 1287.4.

"IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:

"1. Plaintiff/Petitioner Granite Construction Company shall have payment against Defendant/Respondent Bard Water District for the following amounts:

"2. $187,350.94 representing the aggregate amount of the Arbitration Award issued December 9, 2009.

"3. $5,748.96 representing interest at the legal rate from the date of December 21, 2009 through April 12, 2010, pursuant to the Arbitration Award, Civil Code Sections 3287 and 3289(b) and Rule of Court 3.1802.

4. Post-judgment interest will accrue on the entire amount of this Judgment including pre-judgment interest, at the rate of ten (10%) percent per annum . . . ."

The District did not appeal the judgment, and instead, shortly after the judgment was entered, the District "paid and fully satisfied" the judgment amount.

*Declaratory Relief Complaint*

More than three years after the court entered the Riverside judgment and three years after the District paid the judgment in full, in July 2013, the District filed a declaratory relief action in the Imperial County Superior Court, seeking to reopen the judgment. The District argued the Riverside court had no authority to enter the final judgment and therefore the judgment is "void and unenforceable" and can be challenged at any time. The District sought declaratory relief in the form of an order that: (1) "the

5

[Riverside] Judgment is . . . void and unenforceable for . . . [¶] . . . [¶] . . . lack of jurisdiction in the issuing court and, accordingly, set aside"; (2) "the Consent Award issued by AAA is void and unenforceable and has no effect upon the parties"; and (3) the parties' "tentative, conditional settlement" is void and unenforceable.

## *Demurrer*

Granite demurred, arguing the complaint failed to state a viable cause of action because the District was improperly seeking to collaterally attack a final judgment. In support, Granite requested the court take judicial notice of various documents filed in the Riverside action, including the April 12 court minutes of the hearing at which the court granted Granite's confirmation petition.[2]

In response, the District acknowledged the current lawsuit is a collateral attack on the Riverside judgment, but argued the settlement agreement *underlying the judgment* was merely an informal and conditional agreement that became " 'null and void' " once the District's Board unanimously rejected the proposed settlement on February 11, 2010. The District thus argued that because the agreement underlying the Consent Award was null and void, the judgment confirming the Consent Judgment was null and void. The District alternatively requested the court for leave to amend to add additional facts, but did not identify the facts it would add in an amendment.

---

[2]    Although the court took judicial notice only of the April 12 minute order, we grant the request with respect to all proffered documents. These court documents are subject to permissive judicial notice (Evid. Code, § 452, subd. (d)(1)), and are relevant to show the information that was before the Riverside court when it made its ruling. We do not consider the documents for the truth of the matters asserted.

After the District's counsel had the opportunity to argue at length at the hearing, the court sustained the demurrer without leave to amend. The court's written order stated in part: "The Court finds that [the District] has failed [to] allege sufficient facts to establish that the court in the Riverside action acted outside of its jurisdiction in confirming the arbitration award and issuing judgment. Additionally, the Court finds that Plaintiff has failed to plead adequate diligence in pursuing a challenge to the Riverside action judgment since the time such judgment was entered and paid by Plaintiff more than three years ago, and that Plaintiff would be unable to plead diligence based on the allegations of the Complaint."

The District appeals.

DISCUSSION

I. *Review Standards*

In reviewing a judgment after a demurrer is sustained without leave to amend, we examine whether the complaint alleged facts sufficient to state a cause of action under any legal theory. (*Koszdin v. State Comp. Ins. Fund* (2010) 186 Cal.App.4th 480, 487.) In conducting this review, we assume the truth of the alleged facts and all facts that may be reasonably inferred from the allegations. (*Evans v. City of Berkeley* (2006) 38 Cal.4th 1, 6.) However, we do not assume the truth of contentions, deductions or conclusions of fact or law. (*Ibid.*) We also consider documents properly subject to judicial notice. (See *Thaler v. Household Finance Corp.* (2000) 80 Cal.App.4th 1093, 1101.) We apply a de novo review standard, and are not bound by the court's stated reasons. (*Walgreen Co. v. City and County of San Francisco* (2010) 185 Cal.App.4th 424, 433.)

7

In reviewing the court's refusal to permit an amendment, we are governed by an abuse of discretion standard. (*Schifando v. City of Los Angeles* (2003) 31 Cal.4th 1074, 1081.) The court abuses its discretion if there is a reasonable possibility an amendment would cure the defects. (*Ibid.*) An appellant has the burden to show how the complaint could be amended to state a viable cause of action. (*Ibid.*)

## II. *Declaratory Relief Claim Is Improper Collateral Attack on Prior Riverside Judgment*

The District acknowledges its declaratory relief claim constitutes a collateral attack on the validity of the Riverside judgment. Generally, a judgment must be challenged by a timely appeal, and collateral attacks are "disfavored." (*In re Paul W.* (2007) 151 Cal.App.4th 37, 61, fn. 5; accord, *Robert J. v. Leslie M.* (1997) 51 Cal.App.4th 1642, 1647.) However, a collateral challenge may be permitted if the moving party establishes: (1) the judgment is void on its face; or (2) the judgment resulted from extrinsic fraud. (See *Estate of Beard* (1999) 71 Cal.App.4th 753, 774; *Aerojet-General Corp. v. American Excess Ins. Co.* (2002) 97 Cal.App.4th 387, 398, fn. 3.) As explained below, the District's pleading shows it cannot establish either circumstance.

### A. *No Extrinsic Fraud*

First, there was no extrinsic fraud in this case. "Fraud . . . is extrinsic when it deprives the unsuccessful party of an opportunity to present his case to the court," such as when the party was not given notice of the action or was prevented from fully participating in the litigation. (*Westphal v. Westphal* (1942) 20 Cal.2d 393, 397.)

8

The District's pleading affirmatively shows the District had full notice of the confirmation proceedings, and had the opportunity to object to and oppose Granite's petition to confirm the Consent Award. To the extent the District believes the Riverside court erred in entering judgment on Granite's confirmation petition, the District had the full opportunity to challenge the court's decision in the trial court proceedings and/or appeal from the judgment. However, for reasons not clear on the record, it chose not to do so and instead paid the judgment in full without protest or objection. There was no extrinsic fraud in this case.

## B. *Riverside Judgment Is Not Void*

Challenges to void judgments, as distinguished from voidable judgments, can be made at any time. (*People v. American Contractors Indemnity Co.* (2004) 33 Cal.4th 653, 660 (*American Contractors*); *Adoption of Myah M.* (2011) 201 Cal.App.4th 1518, 1531.) A judgment is void when there was an absence of *fundamental jurisdiction*, which requires a showing that the court lacked subject matter jurisdiction over the claims or personal jurisdiction over the parties. " 'Lack of jurisdiction in its most fundamental or strict sense means an entire absence of power to hear or determine the case, an absence of authority over the subject matter or the parties.' [Citation.] When a court lacks jurisdiction in a fundamental sense, an ensuing judgment is void, and 'thus vulnerable to direct or collateral attack at any time.' [Citation.]" (*American Contractors, supra*, 33 Cal.4th at p. 660; accord, *Adoption of Myah M., supra*, 201 Cal.App.4th at p. 1531; *Fireman's Fund Ins. Co. v. Workers' Comp. Appeals Bd.* (2010) 181 Cal.App.4th 752, 766-767 (*Fireman's Fund*).)

9

Conversely, if a court possessed personal and subject matter jurisdiction, the resulting judgment generally cannot be collaterally attacked even for clear legal or factual errors. (*American Contractors, supra*, 33 Cal.4th at p. 661; *Fireman's Fund, supra*, 181 Cal.App.4th at p. 767; *In re Marriage of Jackson* (2006) 136 Cal.App.4th 980, 988 (*Jackson*); *Estate of Buck* (1994) 29 Cal.App.4th 1846, 1857 (*Buck*).) Rather, a party's remedy is to assert a direct challenge to the judgment by an appeal or other available postjudgment remedies. " ' "If a judgment, no matter how erroneous, is within the jurisdiction of the court, it can only be reviewed and corrected by one of the established methods of *direct* attack.". . .' " (*Buck, supra*, 29 Cal.App.4th at p. 1854; see *Fireman's Fund, supra*, 181 Cal.App.4th at pp. 767-768.)

Under these settled principles, the Riverside judgment was not void in the required jurisdictional sense. It is undisputed the court had personal jurisdiction over the parties, as they both had appeared in the California courts and stipulated to the Riverside court's jurisdiction and agreed to stay the matter pending the arbitration proceeding. (See Code Civ. Proc., § 1293.)[3]

The court also had subject matter jurisdiction over the petition to confirm the arbitration award. "Any party to an arbitration in which an award has been made may petition the court to confirm, correct or vacate the award." (§ 1285.) Upon a petition seeking to confirm an arbitration award, "the court *must confirm* the award, *unless* it either vacates or corrects it," or dismisses the proceeding. (*Louise Gardens of Encino*

---

3 All further statutory references are to the Code of Civil Procedure.

*Homeowners' Assn., Inc. v. Truck Ins. Exchange, Inc.* (2000) 82 Cal.App.4th 648, 658; see § 1286.)  If the court enters a judgment confirming the award, the judgment has the same force as any other civil judgment, and is subject to well-settled finality principles. (§ 1287.4; *Devonwood Condominium Owners Assn. v. Farmers Ins. Exchange* (2008) 162 Cal.App.4th 1498, 1505-1506.)

The fact that the arbitration award was denominated a "Consent Award" and was based on the parties' agreement, rather than the arbitrator's independent resolution of factual conflicts, did not eliminate the Riverside court's subject matter jurisdiction to rule on the confirmation petition.  (See 1 Grenig, Alternative Dispute Resolution (3d ed. 2005) § 19.56, p. 475 ["Enforcement of a consent award is accomplished just as enforcement of any arbitration award."].)  Arbitration is intended to be a flexible and more efficient alternative to court proceedings, and to achieve these goals, the arbitrator and parties may resolve disputes in any manner permitted by the parties' agreement.  An arbitrator may use his or her powers to encourage settlement of a dispute, including by incorporating a settlement agreement within an arbitration award that can later be enforced in a confirmation proceeding.[4]

Likewise, the fact that the Consent Award contained a condition precedent did not mean the court did not have subject matter jurisdiction to enter judgment on the

---

[4]     In this regard, we find unhelpful the District's reliance on section 664.6 (governing enforcement of settlement agreements executed during pending litigation) and sections 1297.166 and 1297.167 (relating to "International Commercial Disputes").  These code sections did not eliminate or limit the Riverside court's fundamental jurisdiction to enforce the *arbitrator*'s consent award involving this construction-related dispute.

11

confirmation petition. Judgments may be conditional (see *Avenida San Juan Partnership v. City of San Clemente* (2011) 201 Cal.App.4th 1256, 1259; 7 Witkin, Cal. Procedure (5th ed. 2008) Judgment, §§ 23-28), and arbitrators are likewise empowered to issue conditional awards when necessary to effectuate the parties' agreements. (See generally *Hightower v. Superior Court* (2001) 86 Cal.App.4th 1415, 1433-1441.)

The District argues the judgment is void because the condition precedent requiring Board approval was never satisfied, and therefore the settlement and the resulting Consent Award should be treated as "null, void" as if they "never existed." However, when a contractual condition is not satisfied, this does not necessarily render the contract void or nonexistent. The factual issue as to whether the condition precedent was satisfied, and therefore whether the Consent Award retained validity despite the Board's February 11 rejection vote, was at issue in the Riverside proceedings when the court ruled on the confirmation petition. Whether the Riverside court's decision was right or wrong is not before us. Even if the court's determination on this issue may have been legal error, a legal error does not render the judgment void, only voidable. (See *Fireman's Fund, supra*, 181 Cal.App.4th at pp. 766-767.)

In a related argument, the District contends the Riverside judgment is subject to a collateral attack because the judgment was inconsistent with the terms of the arbitrator's award. Generally, if a court confirms an arbitration award, the judgment must be entered in conformity with the award. (§ 1287.4.) In this case, the judgment differed from the Consent Award in several ways, including that it omitted the condition that the parties'

12

stipulation required Board approval. However, assuming this difference violates section 1287.4, the error was a legal error rather than a subject-matter jurisdictional one.

Citing two Court of Appeal decisions, the District argues a judgment that differs from the party's stipulated agreement is void as a matter of law. (*Carlson v. Eassa* (1997) 54 Cal.App.4th 684 (*Carlson*); *Jones v. World Life Research Institute* (1976) 60 Cal.App.3d 836 (*Jones*).) In each of these decisions, the court found the judgment was void and subject to collateral attack because the court acted beyond its powers and in "excess of" its jurisdiction by entering a stipulated judgment inconsistent with the parties' agreement or understanding. (*Carlson, supra*, 54 Cal.App.4th at pp. 690-697; *Jones, supra*, 60 Cal.App.3d at pp. 840-848.) As explained below, these decisions do not advance the District's arguments in this case.

An "excess" of jurisdiction occurs when the court had jurisdiction over the subject matter and the parties in the fundamental sense, but it had no power " 'to act except in a particular manner, or to give certain kinds of relief, or to act without the occurrence of certain procedural prerequisites.' " (*American Contractors, supra*, 33 Cal.4th at p. 661; *Thompson Pacific Construction, Inc. v. City of Sunnyvale* (2007) 155 Cal.App.4th 525, 537.) Generally, "[w]hen a court has fundamental jurisdiction, but acts in excess of its jurisdiction, its act or judgment is merely voidable" (rather than void) and thus no collateral challenge is permitted. (*American Contractors, supra*, 33 Cal.4th at p. 661; *Proctor v. Vishay Intertechnology, Inc.* (2013) 213 Cal.App.4th 1258, 1269.) However, there are certain public policy exceptions, including when an " 'unusual' " or "exceptional" circumstance prevented an "earlier and more appropriate attack."

13

(*American Contractors, supra*, at pp. 661, 663; accord, *Pacific Mut. Life Ins. Co. v. McConnell* (1955) 44 Cal.2d 715, 727; *Jackson, supra,* 136 Cal.App.4th at pp. 988-989.) These excess-of-jurisdiction exceptions are "narrowly" construed and are disfavored. (*Buck, supra*, 29 Cal.App.4th at p. 1855; see *Carlson, supra*, 54 Cal.App.4th at p. 691 ["Collateral attack of judgments is disfavored even when the judgment is unauthorized by statute."].)

Carlson is an example of a case that falls within the exception. (*Carlson, supra*, 54 Cal.App.4th 684.) There, a district attorney entered into a stipulation with a father regarding his outstanding child support debt, despite that the out-of-state mother did not consent to, sign, or even know about the stipulated amount. (*Id*. at pp. 687-688.) The amount the father agreed to pay in the stipulation was less than the amount the father actually owed the mother. (*Id.* at p. 688.) The court entered this stipulation as a judgment. (*Ibid*.) About three months later, the mother sought to vacate the judgment. (*Ibid.*) The court denied the motion. (*Id.* at pp. 689-690.) On appeal, the reviewing court held the court erred in not vacating the judgment because it was entered *in excess of* the court's *statutory* authority (in violation of a specific code section requiring a parent's signature on a child support stipulation) and thus was "void." (*Id.* at pp. 690, 692, 696-697.) Although recognizing that fundamental jurisdiction existed in the case, the court noted that "acts in excess of jurisdiction may be deemed void . . . where a child's welfare is the subject of the litigation." (*Id.* at p. 697.) This exception—based on the compelling public policy of protecting children—was similarly applied by another Court of Appeal in which the court held that a parental termination order was subject to collateral attack even

though the prior court had subject matter and personal jurisdiction because the order "exceeded the trial court's jurisdiction *and contravenes 'the public policy favoring that a child has two parents rather than one.'* " (*Jackson, supra*, 136 Cal.App.4th at p. 989, italics added.)

In *Jones*, the second case relied upon by the District, the plaintiff and defendants entered into a written stipulation providing that defendants would pay a monetary amount, plus a specified prejudgment interest amount. (*Jones, supra*, 60 Cal.App.3d at p. 838.) The court entered a judgment on that stipulation, but also provided for additional interest of $3,205.84. (*Ibid.*) Defendants did not timely appeal the judgment. But after the appeal period expired, defendant moved to quash the execution of the judgment on the theory that the judgment was "void" because the court had no authority to include the additional $3,205.84 amount. (*Id.* at pp. 838-839.) The trial court denied the motion, but the Court of Appeal held the trial court erred in failing to strike the $3,205.84 sum because that portion of the order was "void" and subject to "collateral attack." (*Id.* at p. 848.)

After a lengthy review of decisional law pertaining to the circumstances under which a party is entitled to collaterally attack a judgment, the *Jones* court stated a void judgment is not only one that results from a lack of fundamental jurisdiction (no subject matter or personal jurisdiction), but it also arises "whenever" the court granted relief that " 'the law declares shall not be granted.' " (*Jones, supra*, 60 Cal.App.3d at p. 847.) Relying on a 1941 California Supreme Court case, the *Jones* court concluded that for purposes of determining whether a collateral challenge is permitted, the phrase " 'lack of

15

jurisdiction' " should be interpreted according to its " 'broader meaning' " that includes " 'any acts which exceed the defined power of a court in any instance whether that power be defined by constitutional provision, express statutory declaration, or rules developed by the courts . . . .' " (*Id.* at pp. 846, 847; see *Abelleira v. District Court of Appeal* (1941) 17 Cal.2d 280 (*Abelleira*).) The *Jones* court stated that under this broad definition of jurisdiction, a party may collaterally attack a judgment when a court acts beyond such powers even if "the court has jurisdiction of the person and the subject matter." (*Jones, supra*, at p. 848.) The *Jones* court thus concluded that although the trial court had fundamental jurisdiction to issue the judgment, the portion of the judgment with the erroneous interest rate was "void" and subject to "collateral attack" because this amount was inconsistent with the parties' agreement *and* violated applicable statutes regarding allowable interest. (*Ibid*.)

*Jones* is factually and legally distinguishable. The specific provision in the challenged *Jones* judgment was on its face inconsistent with the parties' agreement *and* "obviously contrary to law." (*Jones, supra*, 60 Cal.App.3d at p. 848.) Here, the judgment, which merely identified the amounts owed by the District, was not on its face "obviously contrary" to applicable law and was not clearly beyond the scope of the arbitration statutes. Moreover, the *Jones* court merely modified the judgment and did not reopen the prior proceedings as if they never occurred, the remedy requested by the District in its current complaint.

Equally important, we question *Jones*'s broad pronouncements that a judgment is void and subject to collateral attack "whenever" it arises from a judicial act that exceeds

16

the defined statutory power of the court—even if the court has subject matter and personal jurisdiction. (*Jones, supra*, 60 Cal.App.3d at pp. 847-848.) Although the Supreme Court decision it relied upon (*Abelleira*) discussed the various definitions of the term "jurisdiction," including the broader "excess of power" definition, the *Abelleira* court was considering the issue of a trial court's power to interfere with an ongoing administrative proceeding and never stated that the broader definition should be routinely applied in the collateral attack analysis. (See *Abelleira, supra*, 17 Cal.2d at pp. 283-306.) To the contrary, as our high court has since made clear, although the term "jurisdiction" has been used in the sense that a court " 'has no "jurisdiction" (or power) to act except in a particular manner, or to give certain kinds of relief, or to act without the occurrence of certain procedural prerequisites,' " when the court exceeds this form of jurisdiction, "its act or judgment is merely voidable. . . . Errors which are merely in excess of jurisdiction should be challenged directly . . . *unless 'unusual circumstance were present which prevented an earlier and more appropriate attack*.' " (*American Contractors, supra*, 33 Cal.4th at p. 661, italics added; see *Pacific Mut. Life Ins. Co. v. McConnell, supra*, 44 Cal.2d at p. 727; *Jackson, supra*, 136 Cal.App.4th at pp. 988-989 ["stipulated judgment or other order in excess of the court's jurisdiction may not be collaterally attacked absent unusual circumstances or compelling policy considerations"].)

In this case, there were no circumstances that prevented an earlier and more appropriate challenge, nor are there any public policy reasons or unusual circumstances warranting the reopening of the judgment. The parties' dispute arose from a commercial transaction between a public entity and a private contractor. There is nothing about this

17

case or the parties that warrants special protection such as when children are involved or when the party was unfairly prevented from timely challenging the judgment. The District was represented by counsel at every stage of the prior litigation, actively participated in the litigation, and had every opportunity to present its case to the arbitrator and to the court. The Riverside court had fundamental jurisdiction to confirm the Consent Award and enter final judgment. The District had actual notice of the terms of the final judgment and was on constructive notice of the appeal period. There are no unusual circumstances that would permit a collateral attack on the judgment at this late date.

On this record, the court properly sustained the demurrer. "Our judicial system is intended for the resolution of disputes, rather than their perpetuation through the ages." (*Weikel v. TCW Realty Fund II Holding Co.* (1997) 55 Cal.App.4th 1234, 1251.) Without the finality-of-judgments rule, there would be no stability in transactions and no end to litigation. A judgment cannot be reopened merely because the party later believes it was unjust and/or legally or factually unsupported.

We also find unavailing the District's contention the court erred in refusing to provide it an opportunity to amend the complaint. A trial court's decision to deny a plaintiff leave to amend after sustaining a demurrer is reviewed for an abuse of discretion. In showing an abuse of discretion, the appellant has a burden to establish a reasonable possibility of amendment "by specifically showing the additional facts that he or she intends to allege and how those facts would state a cause of action; ' "[t]he assertion of an abstract right to amend does not satisfy this burden." ' [Citation.]"

18

(*Larson v. UHS of Rancho Springs, Inc.* (2014) 230 Cal.App.4th 336, 354; see *Schifando, supra*, 31 Cal.4th at p. 1081.)

In its appellate briefs, the District does not explain with the necessary specificity what facts it could add to its pleading that would support a conclusion that it is entitled to declaratory relief in the form of an order reopening the Riverside judgment. Accordingly, it has not met its burden to show reversible error on the court's denial of its request for leave to amend.

DISPOSITION

Judgment affirmed.  Appellant to bear respondent's costs on appeal.

HALLER, Acting P.J.

WE CONCUR:


O'ROURKE, J.


AARON, J.

19