Filed 2/2/21  P. v. Colt CA1/4

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| THE PEOPLE , <br><br> Plaintiff and Respondent, <br> v. <br> THOMAS MICHAEL COLT, <br><br> Defendant and Appellant. | A158424 <br><br> (San Mateo County <br> Super. Ct. No. SC024366A) |

Thomas Michael Colt, who is serving a sentence of 26 years to life in prison following a 1990 conviction for first degree murder, appeals the denial of a motion to vacate his judgment of conviction, which the trial court construed as a petition for a writ of error coram nobis. The motion contends that the judgment must be vacated because Colt's guilty plea, the trial court's acceptance thereof, and the ensuing judgment were procured by extrinsic fraud by his trial counsel, the prosecutor, and others. The court denied the motion based on Colt's lack of diligence in raising his claims years after discovering their factual bases, and also because he had previously raised the claims in multiple unsuccessful petitions for writs of habeas corpus. Colt contends that a motion to vacate a judgment as void because of extrinsic fraud is not subject to a diligence requirement, and that the court abused its discretion in construing his motion as a coram nobis petition in order to apply such a requirement. Colt cites no authority holding that extrinsic fraud

1

subjects a judgment of conviction to attack at any time by a nonstatutory motion to vacate, without regard for the diligence required for coram nobis relief. We will thus affirm the denial of his motion.

### Factual and Procedural History

In 1990, Colt pled no contest to a charge of first degree murder (Pen. Code,[1] § 187) and admitted that he personally used a deadly weapon during the offense (§ 12022, subd. (b)), in exchange for the dismissal of a special-circumstance allegation that the murder involved torture (§ 190.2, subd. (a)(18)). The trial court accepted the plea and sentenced Colt to 26 years to life in prison. He has since filed numerous petitions for writs of habeas corpus that have been denied by the trial court, this court, and the California Supreme Court.[2]

The motion concedes that Colt killed Regina Dow during a "party" in which the two consumed alcohol and crack cocaine until Dow refused to share a rock of cocaine and pushed Colt, causing him to fly into a rage. He theorizes that he suffered "cocaine psychosis," which induced a paranoid fear that Dow had a knife and impaired his memory of the killing. He concedes that he hit Dow repeatedly in the head with a blunt object, strangled her, and drove her body to an embankment where he dropped it.

When found, Dow's body had head wounds consistent with being struck repeatedly with a blunt object, ligature marks on the neck, a cut to the upper lip, and an excisional wound to the forehead—i.e., a partial scalping. In February 1990, the prosecution filed a complaint that charged Colt with first

---

[1] Statutory references are to the Penal Code unless otherwise stated.

[2] See HC-761, HC-793/386800, HC-1617, HC-1678, HC-1980, HC-2359, HC-2499, HC-2665, HC-2701, A078746, A086402, A108888, A111141, A121492, A152951, S089877, S138729, S185697.

degree murder and that included a special-circumstance allegation that the murder involved torture (§ 190.2, subd. (a)(18)) and an allegation that Colt personally used deadly weapons during the offense (§ 12022, subd. (b)), "to wit: knife, razor, or scalpel, and a ligature."

Colt alleges that he first learned of the scalping from his appointed counsel, Charles Robinson, to whom he consistently denied having scalped Dow. He alleges that Robinson hid his disbelief of his denials, abetted the prosecutor's suppression of medical evidence undermining the allegation that the scalping occurred while Dow was alive, and failed to investigate or inform Colt of the possibility of a "third-party defense" to the torture allegation. Between 1999 and 2010, Colt discovered or came to understand evidence supporting his view that the scalping was a postmortem mutilation; that Dow's body had been moved or rolled over at least six to eight hours after she died; and that there was a homeless camp near where her body was found.

The motion also alleges that Robinson sabotaged a potential intoxication defense by having Colt evaluated by James Missett, a psychologist who Robinson said was "an expert [on] the effect of alcohol and cocaine" but who was not certified in toxicology. Dr. Missett did not calculate Colt's blood-alcohol or cocaine-intoxication levels, and his report minimized Colt's extensive alcohol ingestion as "a few drinks."

In June 1990, the motion alleges, Robinson told Colt that Missett's report did not support an intoxication defense and that he would likely be convicted if he went to trial. The next day, Robinson informed Colt of a prosecution offer to dismiss the torture allegation if he would plead guilty and admit the deadly-weapon allegation. Colt balked at admitting the use of a "knife, razor or scalpel, and a ligature," as he had not scalped Dow. Robinson later told him that the prosecutor would accommodate his concerns.

On June 6, 1990, the prosecutor filed an information charging Colt with murder, alleging the special circumstance of torture, and alleging the use of "deadly and dangerous weapons, to wit: ~~knife, razor or scalpel, and~~ a ligature." The typewritten text had been modified by hand as shown

On June 18, the court held a change-of-plea hearing. Beforehand, Colt watched Robinson fill out a change-of-plea form describing the charge to which he would plead as "PC 187 w/ 12022(b)[ligature]" and the inducement to so plead as "Dismiss PC 190.2(a)(18)." Colt did not notice that Robinson failed to list, as part of the inducement, the striking of the reference to a "knife, razor or scalpel." Colt alleges that Robinson failed to advise him of his right to be sentenced by the judge who would take his plea, or of the importance of reviewing the probation report.

In the change-of-plea hearing, Colt pled guilty to first degree murder, and this colloquy ensued: "The Court: And it's alleged that in connection with that offense that— [¶] Mr. Robinson: With regards to the weapon, we are only pleading to the ligature. [¶] The Court: Thank you. I didn't understand that. [¶] Mr. Wagstaffe [prosecutor]: I will strike the other language, your Honor." In this way, Colt asserts, Robinson ensured that "the original weapons charge was kept off the record of the hearing, just as [he] omitted it from the plea agreement." The court accepted Colt's plea without determining there was a factual basis for the plea.

The probation report obtained before sentencing contains, in Colt's view, "multiple falsehoods" that "can be traced to counsel." He cites a passage that quotes him as saying that " 'something else occurred for which I have no explanation nor memory. [Dow] was found . . . partially scalped. . . . The apparent explanation, so I am told, is that I blacked that experience out. The pathologist claims that it occurred at about the same [time] as the other

injuries.' " Colt denies having told the probation officer that he "had no explanation for the scalping."

At the sentencing hearing the court stated that it had read and considered the probation report and asked if there was any legal cause why sentence should not be imposed. After Robinson answered "no," the court sentenced Colt to 25 years to life in prison, with a one-year enhancement for weapon use.

Colt's motion contends that the judgment of conviction was procured by extrinsic fraud because his "entry into, and the sentencing court's acceptance of, the plea agreement were both fraudulently induced by the following means: (a) the prosecution, abetted by [Robinson], suppressed *Brady*[3] evidence material to [Colt's] third-party assertions (also largely suppressed) in order to fabricate the torture charge; (b) [Robinson] concealed from [Colt] a third-party defense to the torture charge; (c) [Robinson] colluded with the defense psychiatrist to sabotage [Colt's] intoxication defense by preparing and presenting a fraudulent evaluation; and (d) [Robinson], abetted and/or aided by [the prosecutor and the judge who took the plea], prepared and introduced fraudulent documents into court, i.e., the plea agreement and a probation report, for the purpose of undermining the sentencing court's factual basis inquiry for the plea . . . [by] conceal[ing] and/or misrepresent[ing] the original weapons charge in order to lend credibility to a falsified confession in the report that links plaintiff to the 'torture' and minimizes his intoxication . . . ." Colt attributes Robinson's sabotage of his defense and collusion with the prosecutor to "an underground policy within the Private Defender Program . . . to 'save[] the county millions of dollars by pushing poor defendants . . .

---

[3] *Brady v. Maryland* (1963) 373 U.S. 83

into the first plea bargain that comes along—thus avoiding expensive trials and investigations.' "

The motion contends that Colt had good cause for delay in presenting his claims because he had no reason to believe that his lawyer and other officers of the court would engage in fraud until he learned of the factual bases for his claims in 1999, 2004, and 2009–2010. He contends that he exercised due diligence by raising his claims of fraud, *Brady* violations, fraud on the court, and conflict of interest in habeas petitions filed between 2004 and 2014, but the courts have declined to address the claims.

The court denied the motion to vacate in an order stating that it "construes [the motion] as a petition for writ of error coram nobis." The order recites the history of Colt's conviction and habeas petitions, recounts his claims and his allegations about his discovery of their factual bases, and finds him ineligible for coram nobis relief for multiple reasons: "[Colt] admits that he discovered the factual basis for each claim years before filing this petition. Moreover, [his] claims have all been previously raised in one form or another, considered, and denied by this Court. [Colt] identifies no new facts or changes in the law that would justify revisiting these successive claims. [Citation] Further, to the extent that [Colt] raises any new claims, piecemeal attacks on his conviction are not permitted."

Colt filed a timely notice of appeal and requested the appointment of counsel. This court appointed attorney Catherine White to represent him. (See Cal. Rules of Court, rule 8.300(a)(1).) White filed a successful request to augment the record on appeal to include transcripts of Colt's 1990 preliminary, change-of-plea, and sentencing hearings, as well as the evidentiary hearing on his 1994 habeas petition claiming that Robinson had provided ineffective assistance.

White subsequently filed a brief in the nature of a "*Wende* brief." (See *People v. Wende* (1979) 25 Cal.3d 436 (*Wende*).) The brief identifies no colorable issues and requests that this court exercise its discretion to review the record independently. (See *People v. Flores* (2020) 54 Cal.App.5th 266, 273–274 [although *Wende* does not apply to appeals in postconviction proceedings, Court of Appeal has discretion to review record independently].) White notified Colt of his right to file a supplemental brief and submitted on his behalf two requests for time extensions, after which Colt filed a supplemental brief. His brief argues that the trial court erred in denying his motion and disavows the assertion in White's brief that "Appellant requests that this court independently examine the entire record on appeal."

## Discussion

*Wende* holds that, on appeal from a conviction, the constitution requires a court of appeal "to conduct a review of the entire record whenever appointed counsel submits a brief which raises no specific issues or describes the appeal as frivolous." (*Wende, supra,* 25 Cal.3d at p. 441.) Our Supreme Court has clarified that this rule applies "[i]n an indigent criminal defendant's first appeal as a matter of right." (*Conservatorship of Ben C.* (2007) 40 Cal.4th 529, 535.) It does not apply to an appeal, like this one, from an order in a postconviction proceeding. (*People v. Flores, supra*, 54 Cal.App.5th at p. 271; *People v. Serrano* (2012) 211 Cal.App.4th 496, 501–502.) Nonetheless, courts of appeal may exercise discretion to review the record independently in such appeals, in the manner required by *Wende* in a direct appeal from a conviction. (*People v. Cole* (2020) 52 Cal.App.5th 1023, 1030, review granted Oct. 14, 2020, S264278 [surveying decisions addressing "what procedures appointed counsel and the Court of Appeal should follow when counsel finds no arguable merit to an appeal from the denial of postconviction relief"].) We need not determine

7

whether or when this court should exercise such discretion because Colt has filed a supplemental brief expressly disavowing the request that we independently review the record, and arguing the merits of the issues he considers dispositive. We thus review his arguments.

Colt contends that the trial court construed his motion as a petition for a writ of error coram nobis "apparently for the sole purpose of taking advantage of the writ's diligence requirement . . . to deny the underlying motion," and that the court should have granted the motion because the judgment of conviction is void for extrinsic fraud, and a void judgment may be attacked at any time without regard for diligence. He does not contend that if the trial court did have discretion to treat the motion as a petition for a writ of coram nobis, it erred in concluding that he failed to establish the requisite diligence.

To support the proposition that a judgment void for extrinsic fraud may be attacked at any time, Colt quotes decisions in civil actions such as *County of San Diego v. Gorham* (2010) 186 Cal.App.4th 1215, holding that a judgment void because the defendant was never served with a summons or complaint and the court never acquired fundamental jurisdiction can be set aside at any time, without a need to show diligence. (*Id.* at pp. 1225, 1229.)

Colt does not contend that his sentencing court lacked fundamental jurisdiction, but that the judgment was procured by extrinsic fraud. However, while extrinsic fraud may render a judgment void, a party seeking relief on that basis must demonstrate "(1) 'a meritorious case'; (2) 'a satisfactory excuse for not presenting a defense to the original action'; and (3) 'diligence in seeking to set aside the default once the fraud [or mistake] had been discovered.' " (*Mechling v. Asbestos Defendants* (2018) 29 Cal.App.5th 1241, 1246; accord, *Rappleyea v. Campbell* (1994) 8 Cal.4th 975, 982 [quoting test with approval].)

8

In any event, this is not a civil action, but a postconviction proceeding in a criminal case. In that context, the standard vehicle for seeking vacation of a judgment is a petition for writ of error coram nobis. (See, e.g., *People v. Shipman* (1965) 62 Cal.2d 226, 231 ["*coram nobis* 'must be regarded as part of the proceedings in the criminal case [citation]' and it is an established remedy for challenging a criminal conviction"].) In construing Colt's motion as a coram nobis petition, the trial court acted in accord with established practice.

In arguing that the court's approach was an abuse of discretion, Colt cites a treatise stating that "It is often said that a writ of coram nobis is, in effect, a motion to vacate the judgment . . . . It is more accurate to say that coram nobis is one type of motion to vacate the judgment." (Cal. Criminal Law: Procedure and Practice (Cont.Ed.Bar 2017) § 41.25.) That treatise summarizes the prerequisites for the writ, including the rule that a petition may be denied "for undue delay in bringing it after knowing of the need and for delay in developing the facts." (*Ibid.*, citing *People v. Kim* (2009) 45 Cal.4th 1078, 1098.) In stating that "[m]otions to vacate the judgment are not limited to motions that could also be writs of error coram nobis" (*ibid.*), the treatise does not imply, as Colt argues, that a motion to vacate judgment is not subject to a diligence requirement.

In this case the trial court unquestionably had subject matter jurisdiction to accept Colt's plea of guilty to the crime of first degree murder. Colt cites no statute authorizing his motion, and no authority for the proposition that he may file a nonstatutory motion to vacate, and thus avoid the diligence requirement for a writ of coram nobis that applies to a judgment of conviction issued by a court that had subject matter jurisdiction. The trial court thus did not abuse its discretion in construing his motion as a petition

for a writ of coram nobis or in denying the motion based on his lack of diligence in presenting his claims, much less on the rules barring successive and piecemeal litigation of postconviction claims for relief.[4]

## Disposition

The order denying the motion to vacate is affirmed.


POLLAK, P. J.

WE CONCUR:

TUCHER, J.
BROWN, J.

---

[4] Colt's brief relies on a statement in *Carlson v. Eassa* (1997) 54 Cal.App.4th 684 that, while an order denying a motion to vacate a judgment generally is not appealable, if the judgment is void, "the order denying the motion to vacate is itself void and appealable because it gives effect to a void judgment." (*Id.* at p. 691.) The issue here, however, is not whether the order at issue is appealable but whether it reflects a reversible error, which it does not.

Colt also contends that White's representation has deprived him of effective assistance of appellate counsel. Colt's grievances against White, which are questionable, are immaterial to the merits of the appeal.