Filed 4/27/21  Certified for Publication 5/21/21 (order attached)

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| NATALIE PATERRA,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>JON M. HANSEN et al.,<br><br>    Defendants;<br><br>ABS REO TRUST II,<br><br>    Petitioner and Appellant. | D076661<br><br><br><br>(Super. Ct. No. 37-2016-<br>00022659-CU-OR-CTL ) |

APPEAL from an order of the Superior Court of San Diego County, Joel R. Wohlfeil, Judge.  Reversed and remanded with directions.

Parker & Zubkoff, David M. Parker and David J. Zubkoff for Petitioner and Appellant.

JW Howard Attorneys, John W. Howard and Andrew G. Nagurney; Williams Iagmin and Jon R. Williams for Plaintiff and Respondent.

No appearance by Defendants.

ABS REO Trust II (ABS) appeals from an order denying its motion to correct/vacate the portion of a prior quiet title judgment adjudicating the rights of a defaulting party (Clarion Mortgage Capital, Inc. (Clarion)) despite that Clarion had not been served with the operative amended complaint and the court did not hold a hearing on the plaintiff's claims against Clarion.

We conclude the court erred in denying ABS's motion. ABS had standing to bring this motion and it met its burden to show the prior judgment was void as to Clarion. We reverse the order and remand with directions for the court to grant ABS's motion and strike the portions of the prior judgment relating to Clarion.

## OVERVIEW

This case involves competing interests in a single residential condominium property (Property). Although the underlying dispute was relatively straightforward, its resolution became complicated because of the unusual nature of the initial transaction, the multiple subsequent conveyances and encumbrances, and the piecemeal fashion in which the disputes were litigated. Some of these complexities bear on our analysis of the parties' appellate contentions. To help guide the reader through the procedural thicket, we begin by providing an overview of the relevant facts, arguments, and the reasons for our conclusions.

In 1997, plaintiff Natalie Paterra owned the Property and conveyed title to a third party under a "reverse mortgage" type arrangement. Paterra understood this third party would obtain a second secured loan on the Property and retransfer the property back to her after certain events occurred. During the next eight years, title to the Property was conveyed between and among several individuals (without notice to Paterra), and in October 2006, the then-owners obtained a $480,000 loan from Clarion,

2

secured by a deed of trust on the Property (Clarion Deed of Trust). The Clarion Deed of Trust was recorded on November 1, 2006.

Ten years later, in 2016, Paterra (who had continued in possession of the Property) brought a quiet title action against these transferees and Clarion (which had since dissolved). Clarion was served with the first amended complaint, but did not answer. Soon after, the court entered Clarion's default. Paterra then filed a second amended complaint against all of the defendants including Clarion, but did not serve Clarion with this second amended complaint.

The court then held a trial on Paterra's quiet title claims against one of the defendants, Jon Hansen (the other defendants had defaulted or stipulated to judgment). At trial, Paterra presented evidence supporting her claims, and Hansen presented evidence in defense. During trial, Hansen's counsel repeatedly (and unsuccessfully) argued that Mortgage Electronic Registration Systems, Inc. (MERS) was an indispensable party because it was a named beneficiary and nominee on the Clarion Deed of Trust. Paterra's counsel opposed MERS's joinder, but said he understood MERS would not be bound by the judgment.

At the end of the trial but before judgment was entered, MERS moved to intervene stating it had just learned of the lawsuit. The court denied the motion, but stated MERS would not be bound by the judgment as it was not a named party. In denying the motion, the court also confirmed the trial had been "limited to adjudicating the competing interests" of Hansen and Paterra and that the evidentiary hearing did not "address the [Clarion] Deed of Trust." Paterra's counsel agreed with this fact.

In an amended final judgment, the court (Judge Joel Wohlfeil) found Paterra proved her claims entitling her to quiet title against all defendants,

*including Clarion* (the February 2018 Amended Judgment). This judgment said it was "not binding or conclusive" on persons claiming an interest through the Clarion Deed of Trust if those persons had not been named defendants in the action and that it did not apply to interests encumbering the property before November 6, 2006 (the Clarion Deed of Trust had been recorded on November 1, 2006).

The next month, MERS recorded an assignment of the Clarion Deed of Trust to ABS as beneficiary. When ABS then sought to foreclose against Paterra's property under the Clarion Deed of Trust, Paterra brought a new lawsuit against MERS and ABS, seeking to preclude the foreclosure based, in part, on the February 2018 Amended Judgment against Clarion. In various orders, the court in this later lawsuit (Judge Ronald Styn) agreed with Paterra that the February 2018 Amended Judgment "cut off" MERS's rights to assign the Clarion Deed of Trust, and ruled that "ABS's challenge[s] to the validity of the [February 2018 Amended Judgment] as against Clarion are not properly raised *in this action.*" (Italics added.)

Within two months, ABS brought a motion in Paterra's earlier lawsuit (the action before us), asking Judge Wohlfeil to "correct" the portion of the February 2018 Amended Judgment finding in Paterra's favor on her quiet title claim against Clarion. ABS raised several grounds for the motion, including the judgment against Clarion was void because Paterra never served Clarion with the operative second amended complaint and the court had no power or authority to adjudicate rights against Clarion because it had not held an evidentiary hearing on Paterra's claims against Clarion as required by Code of Civil Procedure section 764.010.[1]

---

[1] All unspecified statutory references are to the Code of Civil Procedure.

Paterra opposed the motion. After considering the parties' briefing and extensive written submissions, the court denied the motion on three primary grounds: (1) ABS had no standing because it failed to present sufficient evidence to support its claim it obtained an assignment of Clarion's rights in May 2017; (2) Paterra was not required to serve the second amended complaint on Clarion because the complaint made no substantive changes; and (3) the judgment was "not prohibited by section 764.010" because it was not entered "until after a trial was commenced and a decision was rendered."

ABS appeals. We determine the court erred in denying ABS's motion because the February 2018 Amended Judgment was void as to Clarion for three independent reasons. First, Clarion was never served with the second amended complaint, and this complaint differed materially from the first amended complaint with respect to Clarion. Second, the trial court acknowledged it did not hold a hearing to adjudicate Paterra's rights against Clarion on the Deed of Trust, and under section 764.010, this meant the judgment against Clarion was void. Third, Paterra's failure to name MERS, the beneficiary on the recorded Clarion Deed of Trust when Paterra filed her quiet title lawsuit, rendered the judgment void as to Clarion. Thus, we reverse the order and remand with directions for the court to grant ABS's motion and delete the portion of the judgment finding in Paterra's favor on her claim against Clarion. In reaching this conclusion, we offer no opinion on the merits of the current claims between Paterra and MERS/ABS.

5

## FACTUAL AND PROCEDURAL SUMMARY

We first describe the underlying proceedings. We then discuss ABS's motion to correct/vacate the judgment as to Clarion and the court's ruling on that motion.

### I. Underlying Proceedings

### A. Relevant Background[2]

In 1990, Paterra purchased the Property for $250,000, with an $80,000 down payment and the rest financed through a note secured by a first deed of trust.

In the late 1990's, Paterra was having problems meeting her mortgage obligations, and met with Hansen and Ronald Dunham, who represented themselves as principals of Affiliated Financial Professionals (AFP) or a similarly named entity. After the meeting, Paterra entered into a type of a "reverse-mortgage" agreement with AFP (the AFP 1997 Agreement), in which Paterra agreed to transfer title to AFP to permit AFP to secure a second secured loan on the Property. In exchange, AFP agreed to make payments on Paterra's existing mortgage and related property taxes, and reconvey the property when the second secured loan was paid off. Paterra could then reacquire the property from AFP by paying AFP the difference in the first-mortgage balance from when AFP took over the payments and when it finished repaying the new loan. Under this arrangement, the parties agreed Paterra would retain possession of the Property, including the ability to rent it and retain all rental payments, and was responsible for paying the homeowner's insurance and association fees.

---

[2] This background is based on the evidence presented at the Paterra-Hansen trial and the court's conclusions on the evidence.

In connection with this agreement, Paterra executed a grant deed conveying the property to AFP (1997 AFP Grant Deed), which was recorded. Unbeknownst to Paterra, AFP then initiated a series of transfers of the Property that were not expressly permitted by the AFP 1997 Agreement. First, AFP deeded the property to a third party (John Miller), who obtained a $206,400 loan from Downey Savings and Loan Association secured by a second deed of trust on the Property (Downey Deed of Trust). The property was then conveyed in a series of transactions, resulting in recorded title ownership in the name of Hansen and Dunham's trust. Hansen and Dunham then obtained a new loan for $480,000 from Clarion secured by the Clarion Deed of Trust on the Property, and used the Clarion loan proceeds to pay off the note underlying the Downey Deed of Trust *on November 6, 2006*. The Clarion Deed of Trust stated that Clarion was the lender, and MERS was the "beneficiary" and the "nominee" for Clarion and its successors and assigns.

Two years later, in 2008, Paterra resumed making payments on her first mortgage, but title remained in the names of Hansen and Dunham's trust. About seven years later, Paterra sought to regain title to the Property in her own name free and clear of any encumbrances. To do so, she brought lawsuits against various parties (described below). At the time, the Property was encumbered by two recorded deeds of trust: (1) her first mortgage (with a small amount still owed); and (2) the Clarion Deed of Trust.

## B. First Lawsuit

Paterra first brought a lawsuit against AFP challenging the validity of her original AFP 1997 Agreement and seeking a ruling invalidating the 1997 AFP Grant Deed. After AFP defaulted, in January 2016, the court (Judge Timothy Taylor) entered a judgment declaring the 1997 AFP Grant Deed to be "null and void" (the January 2016 judgment).

7

## C. Second Lawsuit

About six months later, on July 6, Paterra filed a quiet title action against Clarion, Hansen, Dunham, and another party who had held title at one time (Todd Pastorini). She filed a first amended complaint a few weeks later. In this first amended complaint, Paterra described the various conveyances summarized above. She then alleged each defendant's claimed interest in the Property derived from transfers made through the 1997 AFP Grant Deed, and that this grant deed had been declared to be "null and void" in the final January 2016 judgment. Paterra thus claimed she was currently the sole owner of the Property "as a result of the" January 2016 judgment, and sought to quiet title to the Property in her name, "free and clear of any and all interests claimed by defendants . . . ."

All four defendants were served with this first amended complaint, including Clarion, a dissolved corporation. Although Paterra was on notice that MERS was a nominee and beneficiary on the recorded Clarion Deed of Trust, she did not name MERS as a defendant.

Clarion and Dunham defaulted. In response to Paterra's request, the court entered Clarion's default on October 14, 2016. The court also later entered Dunham's default. Pastorini decided not to contest Paterra's claims and entered into a separate stipulated judgment in Paterra's favor on her claims against him.

Meanwhile, in the First Lawsuit (Paterra-AFP lawsuit), on November 7, 2016, Judge Taylor set aside the earlier January 2016 judgment finding AFP was not properly served with the complaint.

## D. Hansen's Demurrer in Second Lawsuit (Quiet Title)

Back in the Second Lawsuit (the quiet title action before us) Hansen (the only remaining appearing defendant) responded to Paterra's first

8

amended complaint by filing a demurrer. The basis for the demurrer was that (1) in her first amended complaint, Paterra relied solely on the prior January 2016 judgment declaring the AFP 1997 Grant Deed to be "null and void"; (2) on November 7, 2016, Judge Taylor vacated this January 2016 judgment; and (3) therefore there was no longer a factual basis to support Paterra's claimed interest in the Property. The court agreed with these arguments and sustained the demurrer with leave to amend.

### E. Paterra's Second Amended Complaint in Second Lawsuit

Shortly after, Paterra filed her second amended complaint. The main difference between this complaint and the first amended complaint was that instead of alleging she was entitled to quiet title "as a result of" the January 2016 judgment finding her 1997 conveyance to AFP was null and void (and thus all subsequent conveyances and secured interests were also void), she alleged the terms of her agreement with AFP (the AFP 1997 Agreement), and alleged this agreement was never validly formed because there was "no meeting of the minds" and/or it resulted from AFP's "perpetuation of fraud" and Paterra's "unilateral mistake of fact."

Paterra served Hansen with this second amended complaint, but did not serve Clarion. Hansen answered and filed a cross-complaint. Trial was scheduled to begin October 27, 2017. Two weeks before that date, the two parties (Paterra and Hansen) filed their trial readiness statement, identifying one of the disputed legal issues to be: "Whether a default and/or judgment can be properly entered against [Clarion] . . . since Paterra failed to serve [Clarion] with the Second Amended Complaint."

### F. Paterra-Hansen Trial in Second Lawsuit and Judgment

Trial began on October 30. After Paterra's counsel presented his opening statement, Hansen's counsel moved for a nonsuit on the basis that

9

(1) Paterra had not served Clarion with the second amended complaint; and (2) Paterra had never named MERS as a party, which was an indispensable party because MERS holds "legal title" to the Clarion Deed of Trust, and was the "beneficiary and nominee" on this instrument. As to the latter argument, Hansen's attorney argued "there is no way [the court] can . . . clear this cloud on the title when MERS has not . . . been named as a defendant."

In response, Paterra's counsel argued Clarion was not required to be served with the second amended complaint because this pleading was not materially different from the first amended complaint. As to the MERS issue, Paterra's counsel argued MERS's rights were derivative of Clarion's rights and thus MERS did not need to be named, and in any event under the applicable code sections (§§ 764.030, 764.045), a quiet title "judgment only binds parties and . . . 'does not affect a claim in the property . . . of any person who was not a party.'"

The court denied the motion. As to the lack of service on Clarion, the court found Paterra was not required to serve Clarion with the second amended complaint because the remedy (quiet title) was the same in both pleadings. As to MERS, the court denied the motion without prejudice, stating it was not "persuaded" at this time that MERS was "truly indispensable to the resolution of this dispute."

The court then presided over a trial on Paterra's claims against Hansen. After the parties gave their closing arguments, on November 1, the court took the matter under submission and told the parties it would issue a tentative statement of decision.

One week later, on November 7, while the matter remained under submission, MERS filed an ex parte motion seeking to intervene in the case or for a ruling that the Clarion Deed of Trust would not be "affected by any

10

judgment in this case." MERS submitted its counsel's declaration saying that MERS first learned of the case on October 30. (Its recorded interest was filed before the filing of Paterra's lawsuit and the related lis pendens).

The next day, on November 8, the court held a hearing on MERS's intervention motion. Paterra's counsel opposed intervention, noting that MERS, as a nonparty, would not be bound by the judgment and/or would have the right to challenge the judgment "on a collateral basis." MERS's counsel responded that if Paterra's counsel agreed that any judgment would not bind MERS (a nonparty), the intervention would not be necessary, but it had not yet heard that unequivocal statement by counsel. MERS's counsel said he was concerned Paterra's counsel would attempt an "end[-run] around" MERS's rights by interpreting a judgment against Clarion to mean that Paterra obtained the Property "free and clear" of the Clarion Deed of Trust. MERS's counsel said the issue raised "due process concerns" because "MERS is a beneficiary under a deed of trust . . . [and] has a right to be heard."

The court decided it would rule on the intervention issue on a noticed motion, rather than on an ex parte basis, to permit all parties to brief the issue. At the end of the ex parte hearing, the court gave the parties its proposed written statement of decision finding in Paterra's favor on her quiet title claim.

In this statement of decision, the court found (1) the AFP 1997 Agreement obligated AFP/Hansen to return the Property to Paterra *on November 6, 2006* (the date the Downey Deed of Trust was "paid off"); (2) Paterra satisfied all her obligations, triggering her current right to a return of the Property; and (3) Hansen's statute of limitations defense was without merit. Based on these findings, the court concluded:

> "[T]itle to the [Property] [must] be quieted *solely in the name of Plaintiff*; that Plaintiff became entitled to the

11

right, title and interest in the subject property no later than November 6, 2006; that Defendant [Hansen] has no right, title, estate, lien, or possessory interest in the Property adverse to Plaintiff . . . [¶] . . . [¶]

"The Court finds . . . in favor of Plaintiff and against Defendant [Hansen] on Plaintiff's claim of quiet title, and *in favor of Plaintiff and against Defendant [Hansen] on Defendant [Hansen's] cross-claims for quiet title and declaratory relief.*" (Italics added.)

The court set a status conference for December 7 to consider the parties' objections to the Statement of Decision.

One week later, on November 16, MERS filed a noticed motion to intervene. MERS noted that the statement of decision said the court was quieting title " 'solely in the name of Plaintiff,' " but did "not reference the [Clarion] Deed of Trust under which MERS is the record beneficiary, and [did] not mention MERS'[s] interest at all." MERS argued the language quieting title "solely in the name of Plaintiff" could be construed in a manner adverse to MERS's interest. MERS said it sought to intervene only to ensure the judgment "specifically states [the Clarion] Deed of Trust remains enforceable."

Paterra opposed MERS's motion. First, Paterra said there was no prejudice because the court's statement of decision made clear the quiet title finding did not affect interests recorded before November 6, 2006, and the Clarion Deed of Trust was recorded on November 1, 2006. Second, Paterra argued MERS's motion was predicated on the mere possibility that a portion of one of the court's sentences (quieting title "solely in the name of Plaintiff") "would be misconstrued," and there was no basis to reach this conclusion. Third, Paterra argued MERS could not demonstrate prejudice because under

section 764.030, MERS "is plainly not" within the category of entities "bound by the judgment."

In response, MERS argued the chain of title would be clouded by a judgment that quieted title in Paterra's favor without mentioning that the Clarion Deed of Trust was unaffected by this judgment (as Paterra acknowledged in her opposition papers).

On December 20, 2017, the court denied MERS's intervention motion, finding the judgment would not, as a practical matter, impair or impede MERS's ability to protect its interest in the Property. The court reasoned:

> "The judgment in this action is not binding or conclusive as to MERS because it was not a party to this action, and MERS'[s] claim on the [P]roperty was recorded[,] [citing sections 762.060, 764.030]. **This action was limited to adjudicating the competing interests of Plaintiff and Defendant [Hansen]. MERS has no interest in the subject matter of this action because this action did not address the Deed of Trust that was recorded prior to the earliest date on which title was quieted in favor of Plaintiff. The language set forth within the Statement of Decision . . . must be interpreted in light of the issue presented for adjudication."**
> (Boldface added.)

The court then adopted its tentative decision as the final statement of decision, and directed Paterra's counsel to "prepare and submit a proposed Judgment consistent with the Court's findings and orders herein."

Paterra's counsel then submitted a proposed judgment, which (in relevant part) provided for entry of judgment:

> "1. In favor of [Paterra] and against [Hansen] on [Paterra's] cause of action to quiet title in the [Property] . . . .
>
> "2. In favor of [Paterra on Hansen's] cross-claims . . . .

13

"3.  Wherefore title to the . . . Property is quieted solely in the name of [Paterra] as the record owner in fee simple as of November 6, 2006 and against [Defendant Hansen] and any persons who claim an interest in the . . . Property by or through [Defendant Hansen] on or after said date. . . .

"4*.  In favor of PATERRA and against CLARION . . . on the default entered by the Clerk on October 14, 2016, following the presentation of evidence and Defendant's failure to appear at trial.*

"5. [In favor of Paterra against defendant Dunham]

"6.  [In favor of Paterra against defendant Pastorini]

"7.  Notwithstanding the forgoing, [and pursuant to section 764.030] nothing in this Judgment is binding or conclusive as to any person, entity, or current holder of any recorded interest in the Subject Property that was recorded before November 6, 2006, including those persons who may claim an interest through the [Clarion] Deed of Trust [recorded] on November 1, 2006, excluding the named defendants to this action.  See . . . section 764.030."  (Italics added.)

Hansen and MERS[3] jointly objected to this proposed judgment, and submitted an alternate version that was identical *except it did not include Paragraph 4 finding in Paterra's favor on her claim against Clarion.*  In support of their request to delete this paragraph, Hansen and MERS argued that under the quiet title statutes, "[i]t is not possible to obtain a quiet title judgment against a defaulted defendant without [an evidentiary] trial *as [to] that defendant*," citing section 764.010 and *Harbour Vista, LLC v. HSBC Mortgage Services Inc.* (2011) 201 Cal.App.4th 1496 (*Harbour Vista*).  (Italics added.)  Hansen and MERS noted the statement of decision clearly stated the trial proceeded against only defendant Hansen and that in denying MERS's

_____

3    MERS, as an "Interested Party," participated in the proceedings pertaining to the wording of the final judgment.

14

motion to intervene, the court made clear the trial had been limited to adjudicating the dispute between Paterra and Hansen. Hansen and MERS also noted the court ruled that title to the Property vested in Paterra as of November 6, 2006, and the Clarion Deed of Trust was recorded on November 1, 2006. Thus, "even if Plaintiff [was] correct and the Court adjudicated the claims against Clarion, Paterra lost [her] case against Clarion."

In response, Paterra's counsel acknowledged that the rights underlying the Clarion Deed of Trust had *not* been adjudicated in the action. He stated: "*Neither [MERS] nor the [Clarion] Deed of Trust . . . was named as a defendant. Accordingly, this Court made no rulings on either when it quieted title 'solely in the name of Plaintiff.' "* (Italics added.) He also stated that during the trial, "Paterra *sought no adjudication* against the claims to title by MERS *or the [Clarion] Deed of Trust. . . . This Court therefore made no determination of those interests. They are what they are*." (Italics added.) Paterra's counsel nonetheless asked the court to keep the proposed Paragraph 4 referring to Clarion, stating: "A finding that a defaulted, dissolved corporation has no interest in the subject property as of November 6, 2006, does not mean the [Clarion] Deed of Trust is invalid or that persons not named as defendants cannot claim through it."

Several weeks later, on January 22, 2018, after the court considered the two different proposed judgments, the court signed the judgment proposed by Hansen and MERS that *did not include* Paterra's proposed Paragraph 4 finding in her favor against Clarion, and did not include any reference to Clarion. In so doing, the court necessarily accepted these parties' arguments that judgment could not and should not be entered against Clarion. Notation of this judgment was entered into the Register of Actions.

15

Shortly after, Paterra sought attorney fees, which were unopposed by Hansen, and the court awarded Paterra $201,550.

Several days later, on February 7, 2018, Paterra's counsel filed an ex parte motion asking the court to sign an attached judgment that included attorneys fees awarded. Counsel said relief was urgently needed because a formal written judgment was necessary to permit Paterra to record her interest in the property to prevent Hansen from continuing to encumber the Property. Paterra's counsel said that "to date no written judgment has been entered" (the record is unclear as to why counsel was not aware of the January 22 judgment). He thus asked the court to sign an attached proposed judgment. However, the attached judgment was Paterra's proposed judgment that *included Paragraph 4 referring to Clarion and entering judgment against Clarion.* Although Paterra's counsel referred to the fact that the parties had earlier disagreed as to the correct language of proposed judgment, counsel did not say that the document that he was now asking the court to sign was Paterra's version.

Although Hansen's counsel was given notice of the ex parte hearing (and apparently of the judgment Paterra was now asking the court to sign), Hansen's counsel did not appear (Hansen's counsel later claimed she did not carefully read the attached proposed judgment and had improperly assumed it was the same as the judgment previously signed except with the included attorney fees).

After the ex parte hearing (which was not reported), the court issued a minute order stating: "Following [Paterra's] ex parte [a]pplication . . . the Court determined that the original Judgment was entered on January 22, 2018. After researching the Court's file, reviewing the ex parte papers and

16

reflecting on the arguments of counsel, the Court executed the proposed judgment . . . on February 8, 2018."

That amended judgment (the February 2018 Amended Judgment) signed by the court was the version that had been proposed by Paterra that *included Paragraph 4 finding in favor of Paterra against Clarion.* No party asked for an explanation or appealed from this judgment.

### G.  Foreclosure Proceedings and Paterra's New Lawsuit

Shortly after the February 2018 Amended Judgment was filed, on February 21, MERS executed an assignment of the Clarion Deed of Trust to ABS (the appellant here) and recorded the assignment on March 8.  On July 9, the trustee on the Clarion Deed of Trust recorded a Notice of Default and Election to Sell, seeking to foreclose on the Property under the Clarion Deed of Trust.

Two months later, in September 2018, Paterra brought a lawsuit against MERS and ABS (the Paterra-MERS/ABS lawsuit), seeking to quiet title against them, enjoin the foreclosure proceedings, and cancel the Clarion Deed of Trust.  In the complaint, Paterra described the February 2018 Amended Judgment, specifically the paragraphs providing that the court had quieted title in Paterra's favor against "any persons who claim an interest" in the Property and Paragraph 4 finding in Paterra's favor against Clarion "following the presentation of evidence."

The court (Judge Styn) overruled MERS and ABS's demurrer.  The court relied on Paragraph 4 of the February 2018 Amended Judgment to conclude that Clarion no longer had any interest in the Property, and therefore MERS had no valid interest to assign.  The court further stated that ABS's "challenge to the validity of the [February 2018] Amended

17

Judgment as against Clarion are not properly raised *in this action*." (Italics added.)

On March 1, 2019, the court granted a preliminary injunction in Paterra's favor. On the probability-of-prevailing issue, Judge Styn stated:

> "The evidence before the court is that the [February 2018] Amended Judgment cut-off all of [Clarion's] rights to the property. As such, MERS, as nominee of Clarion, had no rights to assign [the [Clarion] Deed of Trust to ABS]. In this circumstance, [Paterra] established that the Assignment . . . and subsequent Notice of Default are void and [Paterra's] title is superior."

## II. ABS's Motion to Correct/Vacate

Two months later, on May 22, ABS moved in the Paterra-Hansen action to correct/vacate the February 2018 Amended Judgment, claiming the judgment against Clarion was void or otherwise invalid.[4] ABS argued the judgment must be vacated for several reasons, including: (1) Clarion was never served with the second amended complaint; (2) the court's entry of judgment against Clarion was a mistake because it had originally signed the first order and had not intended to sign a different order with respect to Clarion; (3) there was no evidentiary hearing on Paterra's claims against Clarion as required by the quiet title statutes (§ 764.010); and (4) Clarion had been dismissed before the judgment.

ABS sought relief on statutory (§§ 473, subd. (d), 128, subd. (a)(8)) and equitable grounds. ABS supported its motion with hundreds of pages of

---

[4] Although the caption of the motion was labeled as one to "correct" the judgment, in substance it sought to vacate the judgment with respect to Clarion, and thus we identify and treat it as a motion to vacate. (Capitalization omitted.)

18

documents reflecting the proceedings leading to the February 2018 Amended Judgment, and the records of the later Paterra-MERS/ABS lawsuit.

In opposing the motion, Paterra argued ABS had no standing to bring the motion as a nonparty. On the merits, Paterra argued: (1) there was no evidence the court's signing the February 2018 Amended Judgment was unintentional or a mistake, and Hansen's counsel had notice of the ex parte (unreported) hearing but elected not to attend; (2) there was no requirement that Clarion be served with the second amended complaint because this pleading was substantively identical to the first amended complaint that was served on Clarion; (3) Clarion was never dismissed from the action; (4) section 764.010 is inapplicable because the court did not enter a default judgment, but entered judgment after a trial on Paterra's interests in the Property; and (5) the equitable laches and estoppel doctrines preclude granting ABS relief.

In reply, ABS claimed it had standing to bring the motion because on May 10, 2017, it acquired the beneficial interest in the Clarion loan and the Clarion Deed of Trust. To support this assertion, ABS relied on its allegation in its verified cross-complaint filed in the Paterra-MERS/ABS action. ABS *also* argued that even without this conveyance, a " 'stranger to an action who is aggrieved by a void judgment may move to vacate the judgment' " at any time.

After considering the voluminous documentary record and conducting a hearing, the court denied ABS's motion for three main reasons.

First, the court found ABS had no standing to bring the motion. The court reasoned that ABS's allegation in its Paterra-MERS/ABS cross-complaint that it acquired an interest in May 2017 was insufficient to establish it had acquired the beneficial interest in the Clarion loan and Deed

of Trust before entry of the February 2018 Amended Judgment. The court did not reach ABS's alternate standing argument (that it was an aggrieved party based on the rulings in the Paterra-MERS/ABS lawsuit).

Second, the court found Paterra was not required to have served the second amended complaint on Clarion because this pleading "made no substantive changes as to the claim for quiet title asserted against Clarion."

Third, the court rejected ABS's argument that the February 2018 Amended Judgment was invalid or void because no evidentiary hearing was conducted on Paterra's claims against Clarion. The court said Clarion's "default was entered on October 14, 2016. However, judgment was not entered against any party until after a trial commenced and a decision was rendered. As a result, the amended judgment is not prohibited by section 764.010."

ABS appeals, challenging the court's order. We reject Paterra's argument that the order is not appealable. An order denying a motion to vacate a void judgment is appealable. (See *Gassner v. Stasa* (2018) 30 Cal.App.5th 346, 356; *Carlson v. Eassa* (1997) 54 Cal.App.4th 684, 691 (*Carlson*); Eisenberg et al., Cal. Practice Guide: Civil Appeals and Writs (The Rutter Group 2020) ¶ 2:175.)

## DISCUSSION

### I. Review Standard

Where as here, no appeal was taken and the time for seeking discretionary relief has passed, a trial court has the authority to set aside a judgment only if the judgment was void, i.e., the judgment was beyond the court's fundamental jurisdiction or power. (See *People v. American Contractors Indemnity Co.* (2004) 33 Cal.4th 653, 660 (*American Contractors*); *Carlson, supra,* 54 Cal.App.4th at pp. 691-692; see § 473, subd. (d).)

20

Generally, " '[w]e review de novo the trial court's determination that a default judgment is or is not void.' " (*Airs Aromatics, LLC v. CBL Data Recovery Technologies, Inc.* (2018) 23 Cal.App.5th 1013, 1018 (*Airs Aromatics*); *Hearn v. Howard* (2009) 177 Cal.App.4th 1193, 1200.) We review the trial court's factual findings under the substantial evidence standard. (See *Shamblin v. Brattain* (1988) 44 Cal.3d 474, 478*; Giorgio v. Synergy Management Group, LLC* (2014) 231 Cal.App.4th 241, 247.)

We reject Paterra's argument the only appropriate review standard in this appeal is abuse of discretion. Paterra relies on *County of San Diego v. Gorham* (2010) 186 Cal.App.4th 1215. In *Gorham,* this court reversed an order denying equitable relief to a defaulted defendant because the trial court had not acquired personal jurisdiction over the defendant before the default. (*Id.* at p. 1221.) We stated we reviewed the court's order for abuse of discretion. (*Id.* at p. 1230.) But we also identified the substantial evidence standard applicable to evaluating the court's "factual findings," and stated we were required to "independently review [the court's] statutory interpretations and legal conclusions." (*Ibid.*) *Gorham* did not change the settled rules that a reviewing court independently considers the legal question whether a judgment is void, and evaluates a trial court's underlying factual findings under the substantial evidence standard. (See *Airs Aromatics, supra,* 23 Cal.App.5th at p. 1023 [suggesting a court has a mandatory duty (rather than a discretionary choice) to vacate a void judgment].)

## II.  Standing

Paterra maintains we need not reach the merits of ABS's appellate arguments because the court properly found ABS had no standing to challenge the February 2018 Amended Judgment.

The court found ABS did not have standing based on its conclusion that ABS did not present sufficient evidence to support its assertion that it obtained an assignment of the Clarion note and Deed of Trust in May 2017. ABS's claim to have received this May 2017 assignment was based on its allegation in its verified pleading in the Paterra-MERS/ABS litigation. Judge Wohlfeil found this allegation was insufficient to satisfy ABS's burden to establish the fact of this assignment.

On appeal, the parties dispute whether the court had a sufficient evidentiary basis to reach this factual conclusion. We need not resolve this dispute because even assuming ABS did not present sufficient evidence to show it obtained an assignment of Clarion's rights in May 2017, we agree with ABS's alternative argument that it had standing to challenge the February 2018 Amended Judgment as void based on its status as a party aggrieved by the judgment.

The courts have long recognized that a void judgment may be attacked " ' "directly or collaterally . . . either by parties *or strangers.*" ' " (*OC Interior Services, LLC v. Nationstar Mortgage, LLC* (2017) 7 Cal.App.5th 1318, 1330, italics added; accord, *Mitchell v. Automobile Owners Indem. Underwriters* (1941) 19 Cal.2d 1, 7 (*Mitchell*); *Henry M. Lee Law Corp. v. Superior Court* (2012) 204 Cal.App.4th 1375, 1382 (*Henry*); *Plaza Hollister Ltd Partnership v. County of San Benito* (1999) 72 Cal.App.4th 1, 15-16 (*Plaza Hollister*).) A void judgment " ' "is simply a nullity, and can be neither a basis nor evidence of any right whatever." ' " (*OC Interior*, at p. 1130.)

But if the party bringing the motion is a stranger to the action, the party must point to " 'some right or interest . . . [that] would be affected by . . . enforcement' " of the void order. (*Plaza Hollister, supra,* 72 Cal.App.4th at pp. 15-16; accord *Mitchell, supra,* 19 Cal.2d at p. 7; *Henry,*

22

*supra,* 204 Cal.App.4th at p. 1382 ["nonparty whose rights or interests *are injuriously affected by a judgment . . .* may file a nonstatutory motion to vacate the judgment or order," italics added]; *People v. Silva* (1981) 114 Cal.App.3d 538, 547; *Villarruel v. Arreola* (1977) 66 Cal.App.3d 309, 318 [stranger to the action may challenge a void judgment if his or her interest is " 'adversely affected by the judgment' "].)

In this case, it is undisputed that ABS's interests were adversely affected by the enforcement of the February 2018 Amended Judgment based on events existing when it brought its motion to vacate. In March 2018, MERS recorded an assignment of the Clarion Deed of Trust to ABS as beneficiary. Soon after, ABS attempted to foreclose on the Property based on its beneficiary status on the Clarion Deed of Trust, but Judge Styn enjoined that foreclosure based, in part, on the February 2018 Amended Judgment against Clarion. On this record, ABS was an aggrieved party with standing to move to vacate the February 2018 Amended Judgment (as to Clarion) on the grounds that the judgment was void (as to Clarion).

Paterra argues that ABS is nonetheless barred from challenging the February 2018 Amended Judgment because if ABS's allegation is true that it was a successor-in-interest to Clarion in May 2017, it stood in the shoes of Clarion and therefore was bound by the judgment, and thus its failure to appeal from the judgment is a "jurisdictional bar" to any relief. This argument fails because the court found ABS did not acquire any rights in the Property before the judgment and Paterra has argued (strenuously) that this finding was correct. Additionally, even if ABS was a successor-in-interest at the time of trial and even if—as Paterra argues—ABS therefore had appeal rights, a party's failure to appeal from a judgment does not bar the party from later challenging the judgment on the basis that the judgment was void.

23

The record shows ABS was aggrieved from the February 2018 Amended Judgment against Clarion based on events that occurred when it attempted to foreclose on the Property. The court thus erred in finding ABS had no standing to bring the motion to vacate the judgment on the basis that the judgment was void.

### III. Judgment was Void as to Clarion

We determine the judgment was void as to Clarion for three independent reasons and thus the court erred in denying ABS's motion. First, Clarion was not served with the operative pleading. Second, the court did not conduct a hearing on Paterra's rights against Clarion as the beneficiary on the Deed of Trust. Third, Paterra did not name MERS as a defendant in the action.

### A. Failure to Serve Clarion with Second Amended Complaint

#### 1. Legal Principles

After a defendant's default has been entered, if " 'a complaint is amended in matter of substance as distinguished from mere matter of form, the amendment opens the default, and unless the amended pleading be served on the defaulting defendant, no judgment can properly be entered on the default' " and any judgment is thus void. (*Ostling v. Loring* (1994) 27 Cal.App.4th 1731, 1743 (*Ostling*); see *Sass v. Cohen* (2020) 10 Cal.5th 861, 880-881 (*Sass*).)

" 'The reason for this rule is plain. A defendant is entitled to [an] opportunity to be heard upon the allegations of the complaint on which judgment is sought against him. His default on the original complaint is limited in its effect to that complaint, and if by amendment a matter of substance is added, he should be given the opportunity to contest the same before any judgment is given against him on account thereof. The law,

therefore, requires that the amended pleading shall be served on all the adverse parties, including defaulting defendants.' " (*Ostling, supra,* 27 Cal.App.4th at p. 1743; accord *Engebretson & Co. v. Harrison* (1981) 125 Cal.App.3d 436, 442-443 (*Engebretson*); see *Sass, supra,* 10 Cal.5th at pp. 880-881.)

"When a complaint is served, the defendant faces the decision to contest the action (perhaps seeking to negotiate a settlement at the same time) or to remain aloof and risk the entry of default. If the defendant fails to appear in the action after valid service of process, it is reasonable to assume the latter course has been chosen. Thereafter, if the complaint is amended in a way which would materially affect the defendant's decision not to contest the action, this new circumstance should be brought home to the defendant with the same force as the notification of the original action." (*Engebretson, supra,* 125 Cal.App.3d at p. 442.)

When there are multiple defendants, the rule requiring new service of a materially-changed complaint applies only if the change or addition relates to the particular defendant. (See *Weakly-Hoyt v. Foster* (2014) 230 Cal.App.4th 928, 934; *Carrasco v. Craft* (1985) 164 Cal.App.3d 796, 810 (*Carrasco*).) The required notice is the formal notice embodied on the service of the new pleading, and is not met even if the defendant had actual notice from other sources. (*Sass, supra*, 10 Cal.4th at p. 873; *Airs Aromatics, supra*, 23 Cal.App.5th at p. 1019.)

## 2. Analysis

Paterra and ABS acknowledge these legal principles, but dispute whether the changes in the second amended complaint were material and substantive, or merely changes in form.

An amended complaint makes material changes when it increases the damages sought, or adds or changes a cause of action based on a different factual or legal theory. (See *Carrasco, supra,* 164 Cal.App.3d at p. 808; *Leo v. Dunlap* (1968) 260 Cal.App.2d 24, 27-28.) Based on the policies underlying the rule, "the test for what is and is not a [material or] 'substantive change' should focus on whether the [change] might give rise to any different amount or form of liability, *or indicate the existence of any defense or ground for avoiding liability,* not reasonably disclosed in the original complaint." (Weil & Brown, Cal. Practice Guide: Civil Procedure Before Trial (The Rutter Group 2020) ¶ 6:701, italics added; see *Engebretson, supra,* 125 Cal.App.3d at pp. 442-443.) Under this test, a change is material if the change would have impacted a reasonable defendant's consideration of whether to contest the claims or to default.

Applying these standards, the changes in the pleadings were material. Paterra's first amended complaint alleged AFP obtained title to the Property by the 1997 AFP Grant Deed, but that in January 2016, the court entered a final judgment declaring this deed to be "null and void." Based on that January 2016 judgment, Paterra alleged she had "continuously retained her sole interest in the" Property and therefore the subsequent conveyances and encumbrances (including the Clarion Deed of Trust) are "null and void." Based on these allegations, she sought to quiet title in the Property in her name "free and clear" of all encumbrances, including the Clarion Deed of Trust.

In her second amended complaint, Paterra deleted all references to the January 2016 judgment (because that judgment had been vacated). Paterra instead based her quiet title claim on fraud and/or mistake resulting from her initial agreement with AFP. In so doing, she acknowledged she entered into

26

a contractual arrangement with AFP in which she agreed to deed her interest in the Property to AFP and understood that AFP would obtain a second loan on the Property. But she alleged she was now entitled to a reconveyance of the Property "free and clear" of all encumbrances because AFP then engaged in actions outside the contractual arrangement, including "multiple or successive transfers" and obtaining an "unauthorized loan" from Clarion.

These changes were material because a defendant would have had a reasonable basis to view the two pleadings very differently in deciding whether to contest the charges. The first amended complaint presented primarily a legal question as to the effect of the January 2016 judgment on Clarion's rights in the Deed of Trust. The second amended complaint presented both factual and legal issues to be resolved. Paterra alleged that although she had conveyed title to the Property to AFP in 1997, AFP's subsequent actions as a title holder were not authorized or justified by the parties' initial agreement and that she was entitled to obtain a return of the property and to invalidate the existing encumbrances more than 20 years later. Such a claim—on its face—would have reflected the existence of potential defenses not reasonably disclosed by the allegations in the first amended complaint.

Paterra argues the changes made in the second amended complaint only "incidentally" affected Clarion because "Clarion did not come into the 'chain of title' until well *after* th[e] initial transfer, as well as after several other 'upstream' transfers of Paterra's title by other defendants."

Although the Clarion Deed of Trust was recorded nine years after the initial conveyance, Paterra's quiet title claim against Clarion depended on the factual and legal grounds for invalidating or interpreting the *initial* conveyance. And those grounds were different in the first and second

27

amended pleadings.  In the first amended complaint, Paterra alleged only that a court had already invalidated that conveyance, which allegedly had the effect of invalidating all later transfers and encumbrances resulting from that initial conveyance.  In the second amended complaint, Paterra admitted she conveyed the Property to AFP, but argued that AFP's subsequent actions were not within the parties' contemplation and therefore the Clarion encumbrance was invalid.  Because the latter version of the cause of action would be more difficult to prove and depended on the proof of the alleged facts, a defendant served only with the first amended complaint would not necessarily have been on full notice of the nature of the claim and the potential defenses.

Where, as here, an entry of default was based on a pleading that was then materially amended and not served on the defendant, the ensuing judgment is void.

## B.  Default Judgment in a Quiet Title Actions

### 1.  Evidentiary Hearing Requirement

Paterra's sole cause of action against defendants was a quiet title claim.  A quiet title claim is appropriate to establish an interest in real property as against all existing adverse claims or clouds on title.  (§§ 760.010, subd. (a), 760.020, subd. (a).)

Because of the unique nature of a quiet title action—seeking to declare rights "against all the world"—the normal procedural rules for a default judgment set forth in section 580 do not apply.  (See *Harbour Vista, supra,* 201 Cal.App.4th at pp. 1504-1509; *Nickell v. Matlock* (2012) 206 Cal.App.4th 934, 941-947 (*Nickell*).)

Under section 580, in a non-quiet-title action where a defendant was served by publication or in a noncontract case, after an entry of default and

28

before a default judgment, the plaintiff must present evidence at a hearing (with witnesses or by documents) to prove up the claimed damages or other relief requested, and the defendant cannot participate in this hearing. (§ 580; see *Sass*, *supra*, 10 Cal.5th at pp. 871, 880, 882; *Harbour Vista, supra,* 201 Cal.App.4th at pp. 1502, 1504.) In contrast, in a quiet title action, after a defendant defaults, the plaintiff must prove the merits of its claim and the grounds for the relief sought with admissible evidence at a live hearing in open court and the defendant has a right to participate at this hearing. (§ 764.010; *Harbour Vista*, at pp. 1504-1509; *Nickell, supra,* 206 Cal.App.4th 941-947.)

This latter rule is contained in section 764.010, which states that in a quiet title action:

> "The court *shall examine* into and determine the plaintiff's title against the claims of *all the defendants*. The court *shall not* enter judgment by default but *shall* in all cases *require* evidence of plaintiff's title *and hear such evidence as may be offered respecting the claims of any of the defendants*, other than claims the validity of which is admitted by the plaintiff in the complaint. The court *shall* render judgment in accordance with the evidence and the law." (Italics added.)

In *Harbour Vista,* the trial court entered judgment in a quiet title action against a defaulting defendant after reviewing the plaintiff's prove-up papers in chambers. (*Harbour Vista, supra*, 201 Cal.App.4th at pp. 1500-1501.) The Court of Appeal reversed, observing section 764.010 leaves nothing "to the imagination" (*id.* at p. 1502) and "is about as straightforward as such language ever gets: 'The court shall not enter judgment by default. . . .'" (*id.* at p. 1499). Under this plain language, the *Harbour Vista* court held in a quiet title action after a default, the trial court is "obligated" to hold an "open court" evidentiary hearing "before it adjudicate[s] title" at

29

which both plaintiff and the defaulting defendant are entitled to "participate." (*Id.* at p. 1500.) The court explained the Legislature "clearly does not want the court to adjudicate title on prima facie evidence, as would be allowed in an ordinary default prove-up. [¶] If a court holds a properly noticed evidentiary hearing and no defendant turns up, then the court renders judgment '*in accordance with the evidence and the law,' based on what it has before it*. This would *not* be a default judgment . . . ." (*Id.* at p. 1508, italics added.)

One year later, a Court of Appeal agreed with *Harbour Vista*'s statutory analysis, stating "the unambiguous language of section 764.010 precludes a traditional default prove-up in quiet title actions and imposes an absolute ban on a 'judgment by default' in such actions." (*Nickell, supra,* 206 Cal.App.4th at p. 947.) There, the trial court had entered defendants' default based on defendants' misusing the discovery process. (*Id.* at p. 939.) The Court of Appeal held that "[r]egardless of the reason for the entry of default . . . quiet title actions [are] exempt from a judgment by default because 'once a quiet title judgment on any grounds becomes final, it is good against all the world as of the time of the judgment.' " (*Id.* at p. 944.) Thus, under section 764.010 "a hearing is mandatory" to determine the merits of a quiet title claim. (*Id.* at pp. 944-945) The court stated that after a default in a quiet title action, "the plaintiff is not automatically entitled to judgment in its favor but must prove its case [against the defaulting defendant] in an evidentiary hearing with live witnesses and any other admissible evidence." (*Id.* at p. 947.)

Both *Harbour Vista* and *Nickell* disagreed with dicta in an earlier case, *Yeung v. Soos* (2004) 119 Cal.App.4th 576 (*Yeung*) (a case relied upon by Paterra), that section 764.010 does not prohibit default judgments in quiet

title actions, but merely requires a higher standard of evidence at the prove-up hearing.  (*Harbour Vista*, *supra*, 201 Cal.App.4th at pp. 1502-1503; *Nickell, supra,* 206 Cal.App.4th at p. 947.)

## 2.  Analysis

We find the reasoning in *Harbour Vista* and *Nickell* persuasive that section 764.010 imposes an absolute ban on a judgment by default in a quiet title action, and an "open-court" evidentiary hearing is required.  (See *Deutsche Bank National Trust Co. v. Pyle* (2017) 13 Cal.App.5th 513, 524 [citing *Harbour Vista* with approval]; Greenwald & Bank, Cal. Practice Guide: Real Property Transactions (The Rutter Group 2020) ¶ 11:533.6.)

In her appellate brief, Paterra contends she satisfied this requirement because the court here *did* hold an evidentiary hearing—*the Paterra-Hansen trial*—on her quiet title claim.

We would agree with this argument if there was any basis to find the court adjudicated, or at least considered, Paterra's rights against Clarion at this trial.  However, not only was there no basis to conclude this occurred, the court at the time made clear that the opposite was true.  The court stated the issue of Paterra's rights pertaining to the Clarion Deed of Trust was *not* before it at the hearing and it was *not* adjudicating this defaulting defendant's rights.  After the trial and before the court entered judgment in the matter, the court stated the evidentiary hearing "was limited to adjudicating the competing interests of Plaintiff [Paterra] and Defendant [Hansen]" and that "this action did not address the [Clarion] Deed of Trust that was recorded prior to the earliest date on which title was quieted in favor of Plaintiff."  The court further cautioned that "[t]he language set forth within the Statement of Decision must be interpreted in light of the issue presented for adjudication."  At several points before the February 2018

31

Amended Judgment was entered, Paterra's counsel agreed that her rights pertaining to the Clarion Deed of Trust (the sole basis for her claims against Clarion) were not at issue at the evidentiary hearing, and were *not* in any way resolved at the hearing.

Our review of the evidentiary hearing confirms the court did not, and was not asked to, determine Paterra's rights vis a vis Clarion or the recorded Clarion Deed of Trust. In a quiet title action, plaintiff must prove her title *and* that this title is superior to the claims of *each party* asserting an adverse interest. (*Gerhard v. Stephens* (1968) 68 Cal.2d 864, 918; see *Preciado v. Wilde* (2006) 139 Cal.App.4th 321, 326.) A hearing on Paterra's quiet title claims against Hansen would not have necessarily resolved Paterra's quiet title claims *against Clarion,* i.e., whether the Property remained subject to the Clarion Deed of Trust or whether she was entitled to hold title free and clear of this encumbrance.

To establish proof of the required hearing, Paterra relies on language in Paragraph 4 of the February 2018 Amended Judgment stating judgment was entered in Paterra's favor against Clarion "*following the presentation of evidence and Defendant's failure to appear at trial.*" (Italics added.) However, even assuming this language was intended to be included by the court in the final judgment, this finding is not binding because it is expressly contradicted by the record. As noted, the court repeatedly made clear it did not address, and was not asked to address, any issues concerning Clarion or the Clarion Deed of Trust at the Paterra-Hansen trial. Moreover, a statement that the court considered the evidence in ruling in favor of Paterra *as to Clarion* was inconsistent with other portions of the February 2018 Amended Judgment wherein the court found—based on the evidence at the trial—Paterra was entitled to quiet title *only* as to any encumbrances placed

32

"on the property on November 6, 2006 or after." The Clarion Deed of Trust was recorded on November 1, 2006.

We thus conclude the February 2018 Amended Judgment was improper to the extent it adjudicated Clarion's rights as a defaulted party without an evidentiary hearing on those claims. (See *Nickell, supra,* 206 Cal.App.4th 934; *Harbour Vista, supra,* 201 Cal.App.4th 1496.) The court had no authority to enter the judgment.

But this does not end the matter because ABS (as a stranger to the action and/or having brought the action more than six months after the judgment) had standing to challenge the judgment only to the extent it is void in a fundamental sense. Did the court's entry of judgment in violation of section 764.010 exceed its jurisdictional powers? A void judgment, but not a voidable judgment, is subject to a motion to vacate after the six-month period. Thus, to successfully bring its motion to vacate, ABS was required to show this error resulted in a void judgment.

Neither *Harbour Vista* nor *Nickell* specifically resolved this issue because both sets of defaulting defendants were the parties challenging the judgment. But both courts stated that a quiet title default judgment without the required open court hearing was beyond the trial court's power and authority.

Generally, a judgment is void if the court lacked subject matter jurisdiction or jurisdiction over the parties. (*American Contractors, supra,* 33 Cal.4th at p. 661; *People v. The North River Ins. Co.* (2020) 48 Cal.App.5th 226, 233-234; *Lee v. An* (2008) 168 Cal.App.4th 558, 565-566.) Lack of jurisdiction in this "fundamental or strict sense means an entire absence of power to hear or determine the case, an absence of authority over the subject

33

matter or the parties." (*Abelleira v. District Court of Appeal* (1941) 17 Cal.2d 280, 288 (*Abelleira*).)

But under certain circumstances the courts have also defined a "lack of jurisdiction" resulting in a void judgment in "a broader sense," to mean the situation when "a court grants 'relief which [it] has no power to grant.' " (*Carlson, supra,* 54 Cal.App.4th at p. 691; see *Sass, supra,* 10 Cal.5th at p. 863.) Where, for instance, the court has no power to act "except in a particular manner, or to give certain kinds of relief, or to act without the occurrence of certain procedural prerequisites," the court's action outside these rules is considered void. (*Abelleira, supra,* 17 Cal.2d at p. 288; see *Carlson,* at pp. 691-692; *Thompson Pacific Construction, Inc. v. City of Sunnyvale* (2007) 155 Cal.App.4th 525, 538; *Vasquez v. Vasquez* (1952) 109 Cal.App.2d 280, 283-285.)

One such situation is when the court awards damages in a default judgment in excess of the amount demanded in the complaint. Section 580, subdivision (a) states: "The relief granted to the plaintiff, if there is no answer, *cannot* exceed that demanded in the complaint, in the statement required by Section 425.11, or in the statement provided for by Section 425.115 . . . ." (Italics added.) Section 585, subdivision (b) similarly states the court *shall* award relief "*not exceeding* the amount stated in the complaint." (Italics added.) Under these code sections, the courts have found a default judgment exceeding the amount stated in the complaint to be "void" because the court lacks the statutory authority to enter it. (*Sass, supra,* 10 Cal.5th at p. 863; *id.* at p. 872 ["Given 'the mandatory language' of [sections 580 and 585,] . . . a court has no power to enter a default judgment other than in conformity with the[se] provisions governing default."]; accord *Airs Aromatics, supra,* 23 Cal.App.5th at pp. 1016, 1018, 1019, 1021-1025 [default

34

judgment awarding damages in excess of the demand is "void" because it is beyond the court's jurisdiction to enter such a judgment].)

As with sections 580 and 585, section 764.010 imposes mandatory obligations with respect to default judgments, stating that in a quiet title action, "[t]he court *shall not* enter judgment by default but *shall* in all cases require evidence of plaintiff's title and hear such evidence as may be offered respecting the claims of any of the defendants . . . ." (Italics added.) These provisions—absolutely prohibiting a default judgment without an evidentiary hearing as to each defaulting defendant's claimed interest—reflect the Legislature's intent to provide a method for adjudicating title to real property to ensure a property owner obtains " 'a general decree that would be binding on all people.' " (*Harbour Vista, supra,* 201 Cal.App.4th at p. 1506, fn. 11.) "[O]nce a quiet title judgment on any grounds becomes final, it is good against all the world as of the time of the judgment. There is, for all practical purposes, no going back." (*Id.* at p. 1506.)

Where, as here, the undisputed record shows the court did not hear evidence respecting plaintiff's quiet title claims against a defaulting defendant, the judgment against that defendant is void as beyond the court's fundamental powers to provide a final determination on title. Accordingly, the judgment against Clarion was void as outside the scope of the court's jurisdiction to grant. (See *Carlson, supra,* 54 Cal.App.4th 696 [" 'The mere fact that the court has jurisdiction of the subject matter of an action before it does not justify an exercise of a power not authorized by law, or a grant of relief to a party that the law declares shall not be granted.' "].)

To the extent Paterra relies on *Yeung* to argue the judgment was not void, we find *Yeung* unpersuasive. (*Yeung, supra,* 119 Cal.App.4th 576.) In *Yeung* the court rejected the argument that section 764.010 prohibits a

default judgment and concluded that the statute " 'seems only to require a higher standard of evidence at the "prove-up hearing." ' " (*Yeung,* at p. 580.) *Yeung* thus determined the trial court's failure to hold an evidentiary hearing "did not deprive the trial court of the power to enter the judgment" and did not result in a void judgment because the court's failure to follow the necessary evidentiary requirements "was merely erroneous." (*Id.* at p. 582.) Because *Yeung* failed to fully consider the mandatory language of the statute, and instead construed the language as affecting only the proof or evidentiary burden, we are not persuaded by its conclusion and decline to follow it.

## C. Paterra's Failure to Name MERS as a Party in Quiet Title Action

As a third ground for error, ABS contends that the February 2018 Amended Judgment was also void because Paterra failed to name MERS as a party in the quiet title action. Although ABS did not identify this issue as a ground for its motion to vacate in the trial court, the issue is properly before us because it is purely a legal question based on recorded documents, and the issue whether MERS was a necessary party was raised and discussed in the underlying proceedings before the judgment was entered.

Two federal courts have held that under California law a quiet title judgment against the original defaulting lender is void and may be later challenged by MERS if MERS was a nominee/beneficiary on the deed of trust and the plaintiff did not name MERS as a defendant. (*Mortgage Elec. Registration Sys. v. Koeppel* (N.D.Cal. Mar. 13, 2020, No. 5:18-cv-03443-EJD) 2020 U.S.Dist. LEXIS 45252 (*Koeppel*); *Mortgage Elec. Registration Sys. v. Robinson* (9th Cir. 2014) 45 F.Supp.3d 1207, 1210-1212 (*Robinson*); accord *Mortgage Elec. Registration Sys. v. Robinson* (9th Cir. 2016) 671 Fed. Appx. 562; *Mortgage Elec. Registration Sys. v. Johnston* (9th Cir. 2019) 749 F. Appx 601, 602.)

36

The *Koeppel* and *Robinson* courts relied on language in the quiet title statutes mandating that a plaintiff name known parties with adverse claims. Section 762.010 states a plaintiff in a quiet title action "*shall* name as defendants in the action the persons having adverse claims to the title of the plaintiff against which a determination is sought." (Italics added.) Section 762.060, subdivision (b) likewise states "the plaintiff *shall* name as defendants the persons having adverse claims that are of record or known to the plaintiff or reasonably apparent from an inspection of the property." (Italics added.)

Here, as in *Robinson* and *Koeppel*, at the time the initial quiet title was brought, a recorded deed of trust on the property (the Clarion Deed of Trust) identified MERS as the "beneficiary" acting "as a nominee for the Lender and Lender's successors and assigns."

Although ABS discussed *Robinson* and *Koeppel* in its opening appellate brief, Paterra did not mention these decisions in her respondent's brief and made no attempt to explain why they are not applicable. But she did argue there was no mandatory duty to name MERS even if the statutes use "shall" language because another code section, section 764.030, provides that a quiet title judgment is not binding or conclusive on an entity that was not named as a party but had a prior recorded interest. Paterra thus argues that this statutory scheme creates an option for quiet title plaintiffs, to *either* name all parties with known adverse claims *or* make a deliberate choice not to include certain known parties with known adverse claims with the understanding that these parties would not be bound by the judgment.

Even assuming this is a reasonable reading of the statutes as applied generally, it is untenable as applied to an adverse party in MERS's position. The Clarion Deed of Trust identified MERS as a beneficiary and the lender's

37

nominee on the loan, and provided MERS with the full authority to exercise Clarion's rights and interests with respect to initiating foreclosures, enforcing the loan, and transferring the secured interest. Under identical provisions, the courts have consistently recognized MERS's rights to exercise these powers. (See *Calvo v. HSBC Bank USA, N.A.* (2011) 199 Cal.App.4th 118, 125; *Gomes v. Countrywide Home Loans, Inc.* (2011) 192 Cal.App.4th 149, 1157-1158.)

Given MERS's authority to enforce rights under a deed of trust, a quiet title judgment that adjudicates only the lender's rights, without including MERS, would leave in doubt the enforceability of the deed of trust and create the potential for confusion and conflicting determinations. This result is contrary to the mandatory ("shall") statutory language with respect to naming the parties with adverse claims (§§ 762.010, 762.060). But equally important, the result would undermine the fundamental purpose of the quiet title statutes, which is to provide a coherent and effective procedure for determining interests in real property and to establish ownership of the property "against all the world as of the time of the judgment." (*Harbour Vista, supra,* 201 Cal.App.4th at p. 1506.) Without a unified determination of title as to the lender and MERS on a particular encumbrance, title is left unclear (as occurred here).

Accordingly, we hold that because Paterra sought a determination of her rights against the lender (Clarion) on a deed of trust, she was also required to name MERS—an indisputably known party with a known adverse claim that was integrally related to Clarion's adverse claim—as a defendant in the quiet title action. Her failure to do so rendered the quiet title default judgment against Clarion null and void.

## IV.  Additional Arguments

We reject Paterra's argument that we should uphold the court's order because section 663a requires that a motion to vacate be brought within 15 days of notice of entry of the judgment or 180 days after its entry, whichever is earliest.  These deadlines are inapplicable because ABS did not bring its action under section 663.  When a party challenges a judgment on the basis that the judgment was void, it is "unnecessary to comply with the terms" of section 663.  (*In re Estate of Johnson* (1926) 198 Cal. 469, 472; see *Milrot v. Stamper Medical Corp.* (1996) 44 Cal.App.4th 182, 188 ["a void judgment may be set aside at any time" and therefore "the time limitations stated in . . . sections 663 and 663a . . . do not apply"]; *Lee, supra,* 168 Cal.App.4th at pp. 563-564; *Heidary v. Yadollahi* (2002) 99 Cal.App.4th 857, 862.)

We also reject Paterra's argument that the court's order must be affirmed based on the laches doctrine.  The trial court did not address this ground in its order, and the undisputed facts negate a laches defense.  Based on Paterra's counsel's repeated assertions that the judgment would have no effect on MERS's rights or on the enforceability of the Clarion Deed of Trust, neither MERS nor ABS could have reasonably anticipated that Paterra would make contrary arguments before a different court.  It was not until Paterra succeeded in these arguments, that ABS moved to vacate the judgment to obtain the necessary relief.  And it brought the motion within several months of the Paterra-MERS/ABS court enjoining the foreclosure.  This does not constitute unreasonable delay.

Finally, we agree with Paterra that the record does not show Clarion was dismissed before trial.  We thus reject ABS's numerous alternate arguments based on such a dismissal.  For example, we find ABS's heavy reliance on *Deutsche Bank National Trust Co. v. McGurk* (2012) 206

39

Cal.App.4th 201 in its reply brief to be misplaced. *McGurk* held that because the plaintiff had dismissed the deed of trust beneficiary before the judgment, the beneficiary's assignee was not bound by the judgment. This holding is inapplicable here because the record does not show Clarion was dismissed as a party before trial.

## DISPOSITION

Order reversed. We order the court to grant ABS's motion and to strike Paragraph 4 from the February 2018 Amended Judgment. This disposition does not affect the remaining portions of the judgment which continue to be valid and binding. Paterra to bear ABS's costs on appeal.

HALLER, Acting P. J.

WE CONCUR:

O'ROURKE, J.

DATO, J.

40

CERTIFIED FOR PUBLICATION

COURT OF APPEAL - STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION ONE

NATALIE PATERRA,
Plaintiff and Respondent,
v.
JOHN M. HANSEN et al.,
Defendants;
ABS REO TRUST II,
Petitioner and Appellant.

**Re: D076661**
**San Diego County Super. Ct. No. 37-2016-00022659-CU-OR-CTL**

THE COURT:

The opinion in this case filed April 27, 2021 was not certified for publication. It appearing the opinion meets the standards for publication specified in California Rules of Court, rule 8.1105(c), the requests, pursuant to rule 8.1120(a) for publication, filed by: Fidelity National Title Group, First American Title Insurance Company, Mortgage Electronic Registration Systems, Inc., ABS REO Trust II, Parker & Zubkoff LLP, Stewart Title Guaranty Company, California Land Title Association, and American Land Title Association are GRANTED.

IT IS HEREBY CERTIFIED that the opinion meets the standards for publication specified in California Rules of Court, rule 8.1105(c); and

ORDERED that the words "Not to Be Published in the Official Reports" appearing on page one of said opinion be deleted and the opinion herein be published in the Official Reports.

J. HALLER, Presiding Justice

cc: All Parties